[Turney v. Torrey.]

# Burney *v.* Torrey.

### Contest of Will at Law.

1. *Testamentary incapacity; fraud and undue influence.*—When testamentary incapacity exists there is no room for the operation of undue influence or fraud; it is only as to such persons as have testamentary capacity and have been deceived by fraud or unduly influenced. and thus prevented from freely exercising such capacity, that evidence of undue influence and fraud is relevant and material.

2. *Fraud and deceit in procuring bequest.*— A bequest or devise procured by fraud and deceit, such as, without the imposition, would not have been made, even though there is neither force nor fear brought to bear, is undue influence, and will avoid the instrument as a will.

3. *Undue influence.*—It is not undue influence for a person by forethought and affectionate attention, and provision for the wants of another, and by integrity, to acquire the confidence of such person and a controlling influence over him, using no deceit.

4. *Fraud and undue influence not inferred from unequal disposition of property alone.*—Although the evidence may tend to show some impairment of the mind, if testamentary capacity remains, the fact that there has been an unequal distribution of property, does not authorize the conclusion that such disposition was the result of fraud or undue influence; there must, to have that effect, be other evidence tending to show that the will of the testator was unduly coerced or that there was fraud or deceit practiced in its procurement

5. *Testamentary capacity* —One who, at the time of executing a will, has mind and memory sufficient to remember the property he is about to bequeath, the objects of his bounty, and the disposition he wishes to make of it, and to know and understand the business he is engaged in, and the consequences of the business to be performed, has a sound and disposing mind and memory.

6. *Impeachment of witness.*—To impeach a witness by showing that he has made contradictory statements, the statements must be material to the issue.

7. *Opinion of non-expert witness.*—On a will contest the court properly refused to charge that the opinions of persons not experts on the question of insanity, though honestly formed, are most unsafe grounds for the ascertainment of truth. and that to render such opinions legal evidence they should be accompanied by the facts on which they were based, as such instruction invaded the province of the jury.

8. *Opinion of expert on insanity.* —For the same reason it was proper to refuse a charge that common experience has shown that opinions of professional witnesses on questions of insanity are of little practical value, owing to the universal conflict between those called on the different sides, as compared with testimony as to the acts and sayings of the person whose mind is under investigation.

9. *Opinion of intimate acquaintance.*—Where one has had such a long and intimate acquaintance with testator as to enable him to form a correct judgment as to the latter's mental condition, he may give his opinion that the person is of sound mind, but before he can give his opinion, he must state the facts on which it is based.

| 100 | 157 |
| 100 | 147 |
| 100 | 157 |
| 105 | 54 |
| 100 | 157 |
| 106 | 99 |
| 106 | 318 |
| 107 | 126 |
| 107 | 428 |
| 100 | 157 |
| s113 | 504 |
| 114 | 227 |
| 100 | 157 |
| 120 | 272 |
| 100 | 157 |
| f124 | 563 |
| 125 | 26 |
| 100 | 157 |
| 127 | 37 |
| 127 | 38 |
| 100 | 157 |
| 136 | 19 |
| 100 | 157 |
| 139 | 42 |
| 100 | 157 |
| 140 | 94 |
| 100 | 157 |
| 143 | 41 |

[Turney v. Torrey.]

10. *Impeaching attesting witness.*—Where an attesting witness who testified as to the mental capacity of testator asserted that he had not, two days before the execution of the will, said testator had become imbecile, evidence that he had said so was competent to impeach him.

11. *Weight attaching to testimony of attesting witness.*—The testimony of a witness who attested the will should be weighed and considered as that of any other witness; the fact that he was an attesting witness, of itself, does not entitle his evidence upon a question of testamentary capacity to greater weight than he would otherwise be entitl. d to, except that by reason of being an attesting witness the law authorizes him to give his opinion of the mental capacity of the testator.

12. *Witness may testify that testator was "childish", &c.*—It was competent for a witness to testify that testator was "childish," and that his expression was "simple."

14. *Conclusions of witness as evidence.*—A non-expert witness cannot be asked, for the purpose of showing testator's unsoundness of mind, whether he seemed "to have his mental factulties about him all the time," unless it be first shown that the witness had the opportunity to know, and the facts on which his opinion is based are stated.

APPEAL from the Probate Court of Jefferson County.

Tried before the Hon. M. T. PORTER:

In the matter of the probate of the will of Samuel Torrey, deceased, Henry W. Torrey contested its probate, and, from a judgment declaring the will invalid, the executors appeal.

The proceedings in this case arose out of a contest by the appellee of the probate of a paper filed by the appellants, purporting to be the last will and testament of Samuel Torrey, deceased. The appeal is taken from a judgment of the Probate Court declaring that the paper filed was invalid as the last will and testament of Samuel Torrey, deceased, and ordered that the same be refused and rejected by the Probate Court. By the paper filed for probate the testator bequeathed all of his personal and real property to his wife, Jane E. Torrey, and appointed William T. and William W. Burney his executors. The grounds of contest were (1) that the instrument was not legally executed; (2) the want of testamentary capacity; (3) fraud and undue influence. The testimony for the proponent tended to show that at the time of the execution of the will, which was executed in the presence of three witnesses, they each signing in the presence of the others and in the presence of the testator, the said Samuel Torrey was of testamentary capacity. The testimony for the contestant was in conflict with that of proponents, and tended to show that at the time of the execution of the will the said Samuel Torrey was incapable of making a will on account of mental weakness. There was, however, no testimony to show that he was unduly influenced by any one. It was shown that William T. Burney was his brother-

in-law, and William W. Burney was the son of William T. Burney. Upon the examination of B. F. Roden as a witness for the proponents he testified that he was one of the subscribing witnesses to the will, and identified the will and the signatures thereto. On the cross-examination of the witness he testified that, after the stroke of paralysis, Samuel Torrey never seemed to be the same strong-minded and good business man that he was before; that he was associated with him constantly, and was in a position to know his mental capacity from such association, and from repeated conversations with him upon different subjects; that he was never able to talk connectedly upon any one particular subject, his mind wandering after talking five or ten minutes: that, in his opinion, he grew weaker, mentally,. from time to time. This witness, B. F. Roden, was asked, on cross-examination, the following question : "Did he seem to have his mental faculties about him all the time ?" He answered : "The best way I can describe it is, he seemed more like a child." The proponents objected to the answer, "he seemed more like a child," because it was a conclusion of the witness. The court overruled the objection, and the proponents duly excepted. This witness stated the facts upon which he based his opinion, both as to his being like a child and also his not being mentally sound. There was other evidence for the contestant to the effect that Samuel Torrey "was childish" or "seemed childish." Upon the further cross-examination of the said B. F. Roden, as a witness, he was asked this question : "Did you tell Mr. Lockwood, on 2d avenue, two or three days before the will was made, that Mr. Torrey had become an imbecile ?" The proponents objected to the question because it was irrelevant and incompetent, and duly excepted to the court's overruling their objection. The witness answered that he "did not tell Lockwood that Torrey had become an imbecile." The testimony for the contestant tending to show that Samuel Torrey was mentally unsound was based upon the facts which were stated by the several witnesses, showing that it was by intimate association and repeated conversations that they came to their respective conclusions. Upon the examination of one Lockwood as a witness for the contestant he was asked the following question: "Did R. F. Roden meet you on 2d avenue, between 19th and 20th streets, about two or three days before Mr. Torrey made his will, and before he went north ?" He answered : "Yes, sir." Did he or not, at that time and place, tell you that Mr. Torrey had become an imbecile ?" The proponents objected to these questions be-

[Turney v. Torrey.]

cause they were irrelevant, were hearsay evidence, and because they were asked for the purpose of impeaching Mr. Roden. The court overruled the objection, and the proponents excepted. This witness answered: "He said he was an imbecile." The same witness was asked the following question: "Did you, or not, hear Mrs. Torrey say anything about his [Mr. Torrey's] going to the Kimball House to live? If so, what?" Proponents objected to what Mrs. Torrey said, because it was incompetent and irrelevant. The court overruled this objection, and the proponents excepted. The witness answered: "I heard her tell Mr. Torrey he must go down to the Kimball House; that she couldn't live out there [on the Highlands] and attend to his business in town for him." On cross-examination this witness (J. L. Lockwood) testified that he was an uncle of Warren Torrey, the contestant, and that the said Warren Torrey had no other blood relatives in the south except himself and his children. He further testified that in a certain conversation he said he "would give one hundred dollars to know what Mr. Darby would testify in this case." Mr. Darby was Mrs. Torrey's brother-in-law, having married her sister. The contestant then asked the said Lockwood the following question: "Did you have information that Mr. Darby knew important facts in this case?" This question was accompanied by the statement to the court "that the question was asked only for the purpose of explaining why the witness should say he would give one hundred dollars to know what Darby would testify." The proponents objected to the question because it was irrelevant and incompetent and called for hearsay evidence. The court overruled the objection, the proponents excepted, and the witness answered: "I had information that Mr. Darby knew very important facts in this case." All the other facts, and the other rulings of the court upon the evidence, are sufficiently stated in the opinion.

In its general charge to the jury, the court, after instructing them that if they believed the evidence in the case they would find that the paper offered for probate was duly executed according to law, proceeded as follows:

"As to the mental capacity of Samuel Torrey: On the one hand, it does not require dementia or idiocy or a total deprivation of reason to destroy testamentary capacity—that is, to put a man in such mental condition that he can not make a will. A man may not be capable mentally of making a will, and yet not be an idiot nor demented nor totally deprived of reason. On the other hand, it is not every impairment of the mind which renders a person incompetent.

[Burney v. Torrey.]

Mere weakness of intellect is not sufficient to incapacitate. It is not necessary that a man should have all the organs and faculties of his mind complete, in perfect action, to make him capable of making a will. There may be competency to make a will without such capacity as would enable a man to transact the ordinary business of life. Mind and memory may be impaired and enfeebled by age or disease, and yet the testator possess sufficient capacity to make a will. The impairment must extend to a deprivation of the rational faculties, the use and exercise of which is requisite to a proper and intelligent disposition of property. If Samuel Torrey had, at the time of executing the paper purporting to be his will, mind and memory sufficient to recall and remember the property he was about to bequeath, and the object of his bounty, and the disposition which he wished to make, to know and understand the nature and the consequences of the business to be performed, and to discern the simple and obvious relations of its elements to each other, power to collect and retain the elements of the business to be performed for a sufficient time to perceive their obvious relation to each other, then he had a sound and disposing mind and memory.

"As to fraud and undue influence: Undue influence which will vitiate a will is not simply argument or persuasion or an appeal to the affections; but to have that effect it must amount to moral coercion, and in a measure, at least, destroy the free agency of the testator, and make him make a will which he did not want to make. The particular time to which your inquiry must be directed is at the time of the execution of the paper; and this, both as to sanity and undue influence. If Samuel Torrey had capacity to make a will at the time of its execution, then, so far as that issue is concerned, it would be a valid will, whatever may have been the condition of his mind before and after that time; and, if he did not have the capacity to make a will at the time of signing it, then it would not be his will, whatever capacity he may have had before and after; and if undue influence operated upon him at the time of the signing, whether this influence was exerted by a beneficiary or any one else, then it would be valid [invalid,] but, if undue influence did not operate upon him at the time of the signing, then, so far as undue influence is concerned, it would be a valid will, whatever may have been the case before and after. Testimony as to the mental condition and influence before and after the time of executing the will is admitted to aid the jury in their inquiry as to what was the case at the time of executing.

11

[Burney v. Torrey.]

"Sanity being the normal condition of most men, the law presumes a man to be sane until the contrary appears; and the burden of proof is, in the first place, upon the contestant to show a want of disposing mind and memory; but if the contestant show the testator to be insane to such an extent as to render him incapable of making a will, and that insanity is habitual and fixed, and of a continuous nature, and not merely temporary, such as may be caused by fever or disease, then the burden is upon the proponents to show that the will was executed in a lucid interval, and that the testator, at the time of signing it, was of sound and disposing mind and memory.

"The existence of confidential relations between the testator and a beneficiary, without more, will not put upon the proponents the burden of showing that the will was not induced by fraud or undue influence; but confidential relations, coupled with activity on the part of beneficiary in and about the preparation or execution of the will, such as the initiation of proceedings for the preparation of the paper, or participation in such preparation, employing the draughtsman, selecting the witnesses, and the like, does put that burden upon the proponents. A man has the right, under the law, to make any disposition of his property in his will, however partial or capricious, that he sees proper. He may cut off his children, and give it to strangers, if he desires. He may also change his mind as often as it pleases him as to the disposition of his property. You may, however, in considering the questions of capacity and fraud and undue influence at the time of the execution of the paper, consider whether or not it is reasonable and natural in its provisions, and whether it is or not in accordance with previously expressed intentions."

Under the opinion of this court it is deemed unnecessary to include, among the charges copied in this statement of facts, those charges which have reference to undue influence, and they are therefore omitted. The proponents requested the court, among others, to give the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1) "The proponents request the court to charge the jury that the opinions of persons, on the question of insanity, who are not experts, though ever so honestly formed, are most unsafe guides for the ascertainment of truth, and that to render the opinions of witnesses, in such cases, legal evidence, such opinions should be accompanied by the facts or circumstances upon which they are based." (3) "In the case on trial, Mr. Torrey, the

testator, is presumed to be of sound mind and disposing memory, and competent to make the will in question; and unless the contestant has proved to the satisfaction of the jury, by the evidence in this case, that Mr. Torrey had not sufficient mind and memory, at the time the will was made, to know the beneficiary, (his wife,) and to know his property, and to know what business he was engaged in, the jury will find for the proponents on the issue of the want of testamentary capacity." (4) "That common experience has shown, and the courts have often remarked, that opinions of professional witnesses upon questions of insanity have become of little practical value upon such trials, from the almost universal conflict between those called upon the different sides, as compared to the testimony of the other kind, consisting of the acts and sayings, things done and said by him, the consideration of whose mind is under investigation." The contestant asked, among others, the following written charges : (2) "If the jury believe from the evidence that, at the time of the execution of the will offered for probate, Samuel Torrey was of unsound mind, and by reason of such unsoundness of mind he did not have an intelligent knowledge of the act he was engaged in and of the property he possessed, and an intelligent perception and understanding of the disposition he desired to make of it and the persons he desired to be the recipients of his bounty, and the capacity to recollect and comprehend the nature of the claims of those who are excluded from participating in his bounty, they must find in favor of the contestant, Warren Torrey." (9) "Mental capacity is always sufficient to defeat a will, the direct offspring and fruit of such incapacity ; and it is immaterial that the testator, if he had been of sound mind, would have made the same will. A will which is the direct offspring of such incapacity cannot be upheld merely because the jury believe the testator, if he had been sane, would have made the will." (15) "I charge you, gentlemen of the jury, that the fact that B. F. Roden attested the will of Samuel Torrey as a witness does not furnish any evidence of any opinion he had as to the sanity of Samuel Torrey. No inference as to Roden's opinion as to the testator's sanity or insanity can be drawn from the mere fact of attesting the will as a witness ; and the testimony of B. F. Roden is entitled to the same weight as it would have been if he had not been an attesting [witness ?] to the will." (2) "The law does not lay down a special test or gauge of testamentary capacity, or of what acts, conduct, or surroundings will constitute undue influence. Each case must

[Burney v. Torrey.]

be determined according to its own peculiar facts and circumstances, having in view the single fact that no instrument can be established as a will unless it speaks the free and voluntary purpose of the testator. And if such instrument is offered for probate, and is contested on the ground of unsoundness of mind and undue influence, and the jury believe that such instrument is offered for probate by parties occupying confidential relations to the deceased at the time of the making the alleged will and receiving benefits therefrom, the existence of such confidential relations, coupled with activity on their part in the preparation of the will and in obtaining the attesting witnesses, will raise a presumption of undue influence, and cast upon them the burden of showing that it was not induced by undue influence on their part, directly or indirectly." The court gave each of these charges requested by the contestant, and to the giving of each of them the proponents separately excepted.

WEBB & TILLMAN, and W. D. BULGER, for the appellants. Witnesses are not allowed, even though they be subscribing witnesses to the will, to testify to conclusions of fact, but only to facts and circumstances, from which the jury shall draw their own conclusions. The exception to this rule is as old as the rule itself, that an expert, having peculiar knowledge or skill in reference to the subject-matter of the inquiry, may express his conclusion upon the facts.—*Mobile Life Ins. Co. v. Walker*, 58 Ala. 290. The decisions establishing or pronouncing the rule above stated are as follows : *Hames v. Brownlee*, 63 Ala. 277; *Talledega Ins. Co. v. Peacock*, 67 Ala. 253 ; *Cummins v. State*, 58 Ala. 387 ; *Smith v. State*, 55 Ala. 1 ; *Baker v. Trotter*, 73 Ala. 277 ; *Pollock v. Gantt*, 69 Ala. 373 ; 1 Green. on Ev. § 440. The statement of the witness that the testator "seemed like a child" is not the mere "short-hand rendering of the facts" but is a summary of many facts which presented themselves to the mind and eyes of the witness, and which should have been told to the jury. The court erred in allowing the witness Roden to be asked the question whether or not he told Mr. Lockwood, two or three days before the will was made, that testator had become an imbecile.

To allow this question was illegal because Roden was a subscribing witness to the will. The only purpose for which that question could have been asked was to impeach the witness Roden. Roden was not the proponents' witness —he was the law's witness. He was one of the witnesses

[Burney v. Torrey.]

the law compelled the proponents to introduce, and not the witness of the proponents. *Stobart v. Dryden*, 1 M. & W. 615 ; 1 Green on Ev. (14th Edn) § 126.

The witness Hawkins and others should not have been allowed to testify as to their opinions of the condition of the testator's mind, for while they had been intimate with testator prior to the time of the latter's insanity it was not shown that they were familiar with testator *at the time* of his alleged insanity. Amer. & Eng. Encyp. of Law, p. 504, Subd. 3; 56 Ala. 523; 8 Ala. 542; *Colee v. State*, 75 Ind. 511; 1 Green. on Ev. p. 532, § 440; *Powell v. State*, 25 Ala. 21; *In re Carmichael*, 36 Ala. 522.

Charge 1 asked by proponents should have been given. That the opinions of non-expert witnesses are unsafe guides for the jury follows from the fact that such opinions are only admitted *ex necessitate*, it is the weakest of testimony. 1 Green. on Ev. § 440 ; 7 Amer. & Eng. Encyp. of Law pp. 492, 493; 11 *Ib.* pp. 161, 162, note 1, *Roberts v. Trawick*, 19 Ala. 84.

Charge 3 requested by the proponents correctly sets out the test of testamentary capacity. *O'Donnell v. Rodiger* 76 Ala. 222; *Leeper q. Taylor*, 47 Ala. 221; 2 Green. on Ev. §§ 373, 689; 1 Jarman on Wills, p. 104; *Daniel v. Hill*, 52 Ala. 430; *Cotton v. Ulmer*, 45 Ala. 378; *Kramer v. Weinart*, 81 Ala. 416; *Stubbs v. Houston*, 33 Ala. 555.

Charge numbered 4, requested by proponents, as to the value of the testimony of experts should have been given. *U. S. v. Pendergast*, 32 Fed. Rep. 198; *Pratt v. Rawson*, 40 Vt. 183; *Whitaker v. Parker*, 42 Iowa 585; *Borland v. Walreth*, 33 Iowa 130 ; Lawson's Expert Tes, pp. 240-243.

Charge numbered 2 requested by the contestant should not have been given. The error in this charge is in the use of the words "intelligent knowledge" and "intelligent perception and understanding"—the stress laid on these words was calculated to mislead the jury. *Kramer v. Weinart*, 81 Ala. 416.

Charge numbered 9 given for the contestant is erroneous. The charge is susceptible of the construction that any mental incapacity, however slight, which contributed to produce the execution of the will would defeat the will. Kramer's case 81 Ala. 416 and authorities there cited.

The court erred in giving, for contestant, the charge number 15.

The attestation of a will by a witness is a declaration to the effect that not only the instrument was duly executed in his presence, but that the testator possessed testamen-

[Burney v. Torrey.]

tary capacity. See the cases referred to in *Otterson v. Hofford*, 36 N. J. Law, 131; *Boylan v. Meeker*, 4 Dutch. (N. J.) 294; *Losee v. Losee*; 2 Hill (N. Y.) 609; 2 Greenleaf on Evidence, section 691, and note to section 694.

BUSH & BROWN and H. C. SELHEIMER for the appellee. When an opinion of the witness is only the shorthand rendering of the facts it may be given in evidence subject to cross-examination as to the facts on which it is based. 1 Wharton on Evidence § 510 *et seq.* and notes. *Connecticut Life Ins. Co. v. Lathrop*, 111 U. S. 612-624; *Carney v. State*, 79 Ala. 18; *Perry v. State*, 87 Ala. 33. See also *Moore v. Spier*, 80 Ala. 135; *Jenkins v. State*, 82 Ala. 28. If the acquaintance of a non-expert witness with testator was sufficiently long and intimate to justify the formation of a correct judgment as to his mental status and habits his opinion is admissible, though unaccompanied by the facts upon which it is based. *Stubbs v. Houston*, 33 Ala. 555; *Moore v. Spier* 80 Ala. 134; *Ford v. State* 71 Ala. 397; *Keithley v. Stafford*, 126 Ill. 507; *Meeker v. Meeker*, 74 Iowa 354-5; *In re Carpenter*, 79 Calif. 382; *Territory v. Roberts*, 22 Pac. Rep. 132; *State v. Lewis*, 22 Pac. Rep. 241. For a full discussion of the subject see 1 Jarm. on Wills (*Randolph & Talcott's* 5th Am. Ed.) P. P. 129-20 (Notes.) Charge numbered 1 requested by proponents invades the province of the jury by charging upon the weight to be given certain testimony. The fact that a non-expert witness is unable to state all the circumstances on which his opinion is predicated, or that the circumstances stated by him do not justify his opinion, does not authorize the Court to exclude his opinion as evidence, or to instruct the jury to disregard it, provided the witness had an opportunity of forming a correct judgment of testator's sanity or insanity. *Stubbs v. Houston*, 33 Ala. 555.

If the acquaintance of a non-expert witness with testator was sufficiently long and intimate to justify the formation of a correct judgment as to the mental status and habits of the testator, his opinion is admissible, though unaccompanied by the facts upon which it is based. See authorities cited above. The court properly refused to give charge 3 requested by proponent.—*O'Donnell v. Rodiger*, 76 Ala. 227; *Saxon v. Whitaker*, 30 Ala. 237; *Kramer v. Weinart*, 81 Ala. 416. Charge 4 requested by proponents was properly refused, because the only professional witness called by contestant expressly disclaimed being an expert on insanity, and there is, therefore, nothing in the evidence on which to

base the charge. The charge is argumentative, abstract and misleading. It invades the province of the jury by charging upon the weight or sufficiency of evidence. It institutes a comparison between evidence of different kinds, thereby charging upon the weight to be given to evidence of a particular kind. · A request for the general charge on an issue in a case, or an instruction that there is no evidence to support an issue involved in the case is properly refused, where, although no positive and direct testimony was adduced in that regard, there was room for the jury to draw an inference as to the issue.—*A. G. S. Ry. Co. v. Tapia*, 94 Ala. 226. As to charge 2, requested by contestant, and the use of the word "intelligent" see *Meeker v. Meeker*, 74 Iowa, 352; *Keithley v. Stafford*, 126 Ill. 507; *Reichenbach v. Ruddach*, 127 Pa. 590; Buswell on Insanity, § 363. Charge 9, requested by the contestant, was properly given by the court. If a will is the direct offspring and fruit of mental incapacity to execute a will, it can not be the will of a person of sound and disposing mind and memory, and is invalid, although the testator might have made the same will if no mental incapacity had existed.—*Bancroft v. Otis*, 91 Ala. 281; *Cotton v. Ulmer*, 45 Ala. 378, 397. Charge 15, requested by contestant, was properly given. 1. The fact that a witness attested the will of the testator does not furnish any evidence of any opinion he had as to the sanity of the testator; and no inference as to the opinion of such witness, at the time the will was signed, as to the testator's sanity or insanity, can be drawn from the mere fact of his attesting the will as a witness.—*Baxter v. Abbott*, 7 Gray, 73 Mass. 82. 2. A will may be declared invalid on the ground of the testator's insanity, *as proved by the attesting witnesses.* This was done in the case of *Copeland v. Copeland*, 32 Ala. 512.

COLEMAN, J.—Appellants offered to probate an instrument as the last will and testament of Samuel Torrey. The probate was contested by Henry W. Torrey, a son of deceased by a former wife to the one which survived the deceased, and who was made the sole beneficiary under the instrument offered for probate as his will. The grounds of contest were :

    1st. That the instrument was not legally executed.

    2d. Want of testamentary capacity.

    3d. Fraud and undue influence.

The record is voluminous, and the assignments of error unnecessarily numerous,—many raising the same legal questions. We will consider the important questions.

[Burney v. Torrey.]

The court correctly instructed the jury that the will was properly executed. The court was also requested by the proponents to charge the jury, that there was no evidence before them to sustain the contest upon the grounds of undue influence. We are of opinion that this charge should have been given, and if correct in this conclusion it disposes of many of the assignments of error, without a special examination of them. In considering the question of fraud and undue influence, it should be kept in mind, that when testamentary incapacity exists, there is no room for the operation of undue influence or fraud. It is only to such persons as have testamentary capacity, and who have been deceived by fraud, or unduly influenced, and thus prevented from freely exercising such capacity, that evidence of undue influence, or fraud is relevant and material. In the one case, the will is invalid for want of testamentary capacity. In the other, the person has testamentary capacity, but the will power to exercise it has been overcome, by force or fear, or the desire for peace, or some improper influence not proceeding from affection, and the party is constrained, or by fraud induced, to make the will. This is undue influence. A bequest or devise, procured by fraud and deceit, such as, without the imposition, would not have been made, even though there is neither force nor fear brought to bear, is undue influence, and will avoid the instrument as a will. Sufficient capacity, free agency, without the imposition of fraud or deceit, are the elements of a valid will.

It is a great mistake of the principles of law under consideration, as applicable to wills, to suppose that a person who by forethought and affectionate attention, and provision for the wants of another, and by integrity, acquires the confidence of such person, and a controlling influence over him, using no deceit, is in the exercise of what in law is termed "undue influence." Such a doctrine would place a premium on neglect and indifference, and "rob virtue of its reward."

What are the facts? Samuel Torrey lived to be something over sixty years of age. During the month of September, 1890, he had a paralytic stroke. He never physically recovered entirely from the stroke. Whether he did or not, mentally, is controverted. He survived the stroke about two years, and died, according to some of the evidence from bilious fever. Prior to the time of the attack of paralysis the uncontroverted evidence is, that he was an energetic, good business man, self-reliant, and entirely independent of the influence of his wife, or any other person, in his business matters. The undue influence, if any was exercised by

his wife, is conceded to have been and must have been after
the paralytic stroke. We have examined the record care-
fully, and the brief of counsel with special reference to this
question. In our opinion there is nothing in the record to
support the contention of undue influence. Very few facts
are referred to in the argument for appellee on this question,
and these we will consider. The first and most prominent.
is, that the wife was the sole beneficiary under the will, the
testator knowing that he had a son living (the contestant),
or if the testator supposed him dead, then he knew that this
son had left two children, testator's grand children. The
fact that a testator makes an unequal distribution of his
property, or omits entirely from his bequest some of those,
who are next of kin, standing alone, is not legal evidence
tending to show either testamentary incapacity or undue
influence. It is only when there is other evidence tending
to show mental incapacity or undue influence that the fact
that he had not disposed of his property equally becomes
a fact to be considered in connection with such other evi-
dence. If the testator had expressly declared in his will,
"that he had a son somewhere living," or if he was dead
that "he had two grand children who were very dear to him,
yet for reasons satisfactory to himself, he devised and be-
queathed all his property to his wife," would the will be
rejected when offered for probate, because of such a state-
ment, or would such a statement in the will put the burden
upon the proponent to show that testator was of sound mind
or had not been unduly influenced, or had not been de-
ceived? Clearly not. A person of testamentary capacity,
and which the law presumes every one to possess, has the
right to make unequal gifts of his property, if he sees proper
to do so, by testamentary disposition, and the fact that he
does so, does not *per se*, establish, nor authorize, the infer-
ence that the donor is of unsound mind, nor that the gift
was the result of fraud, nor of undue influence. In case of
wills other evidence is necessary to justify such a conclusion.
*Eastis v. Montgomery*, 93 Ala. 293; *Bancroft v. Otis*, 91 Ala.
279; *Coleman v. Robertson*, 17 Ala. 87; *Kramer v. Weinart*,
81 Ala. 417; *Roberts v. Trawick*, 13 Ala. 78; *Taylor v. Kelly*,
31 Ala. 59; *Leeper v. Taylor*, 47 Ala. 221.

The other fact referred to in brief of counsel was a declara-
tion made by Mrs. Torrey to her husband, the testator. It
appears that at the time of the attack, these parties were
living out on the Highlands of Birmingham, some distance
from the business part of town, and some time after the
stroke, one Lockwood, the uncle of the contestant, testifies

that he "heard her say to Mr. Torrey he must go down to the Kimball House, that she couldn't live out there and attend to his business in town for him." The Kimball House was the property of the testator, and convenient to the business part of town. It was rented out as a boarding house. Testator owned other considerable real estate, in the city, which was rented out. The move to the Kimball House was soon after the attack of paralysis and many months before there was any steps taken in reference to the making of a will. We can see nothing in this statement, if true, which tends to show fraud, deceit, coercion or imposition of fear, to influence the testamentary disposition of his property. Certainly when the testator sent for his nephew who was an attorney, to write his will, there is no evidence to show that his wife knew of his purpose, or was present when he gave instructions as to the disposition of his property, or had anything to do with sending for the attesting witnesses, or was present at the time the will was signed and attested, or advised him in regard to the disposition of his property, or made any suggestion at any time relative thereto.

The proposition we declare is, that although the evidence may tend to show some impairment of the mind, if testamentary capacity remains, the fact that there has been an unequal distribution of property, does not authorize the conclusion, that such disposition was the result of fraud or undue influence. There must be other evidence tending to show that the will of the testator was unduly coerced, or that there was fraud or deceit practiced in its procurement. To hold otherwise would lay down a principle which would authorize the setting aside of every will, on the grounds of fraud or undue influence, when any impairment of mental vigor was shown, although the testator possessed testamentary capacity, unless the disposition of his property accorded with what in the opinion of the jury it should have been.

We will next consider the principles of law declared by the trial court, as to what constitutes testamentary capacity. We consider the charge given by the court ex mero motu with the exception of what we believe to be a clerical error, to be a clear and correct statement of the law of testamentary capacity. The clerical error is in writing "valid" for "invalid." The whole charge and the context show, that "invalid" was the word used by the court. We are of opinion the rule declared in laying down the mode for the impeachment of witnesses is too broad. In order to impeach a witness by showing that he has made contradictory statements, the

[Burney v. Torrey.]

statement made, must be material to the issue. It is not every contradictory statement made, but only those relative and material, which is the basis for proof of contradictory statements.

The difficulties on this branch of the case arise from written charges "given" or "refused" prepared by counsel.

We are of opinion the charges upon the question of testamentary capacity requested by proponent were properly refused. The first and fourth charges are in language copied from the opinion of the court in Roberts v. Trawick, 13 Ala. 85, supra. An examination of the case will show that the court was laying down a rule for the trial court, and giving the reasons for the admission or rejection of certain facts as evidence, and not a rule for the guidance of juries, after such evidence has been admitted. The charges invaded the province of the jury, and were properly refused.

The second was erroneous in requiring the contestants to prove more than the law requires. When the law predicates certain facts, and declares their existence to be evidence of testamentary capacity, the rule does not impose upon a contestant the burden of affirmatively showing, the non-existence of all the facts predicated. The correct inference from the rule declared, is, that if the testator is wanting in either of the specified constituents, he does not possess all that is necessary to constitute testamentary capacity. The affirmative charges, which instructed the jury generally, to find for proponents, were properly refused.

If the phrases "intelligent knowledge," "intelligent perception and understanding," "intelligent comprehending," were intended to make the standard of testamentary capacity higher than it would be, by the omission of the word "intelligent" from the charges in which it occurs in the connection mentioned, then the charges should have been refused on this account. The connection in which these phrases were used was calculated to make this impression on the minds of the jurors and to mislead them, and the charges should have been refused. In the case of Kramer v. Weinart, 81 Ala. 414, this court condemned a charge which required as a test, that the testator must "know and understand the business she then had in view, and to think and act on that business soundly." The rule which prevails in this State, and is supported by the great weight of authority is, that if the testator, has mind and memory sufficient to recall and remember the property he is about to bequeath, the objects of his bounty, the dispositions which he wishes to make, to know and understand the business he is engaged in, the con-

sequences of the business to be performed, he has, in contemplation of law, a sound and disposing mind and memory. These elements include a power to know and discern their obvious relation to each other. The law is clearly and fully stated in *Taylor v. Kelly*, 31 Ala. 59, and though different expressions have been used, in later decisions, none were intended to alter or add to the requisites there declared. Charge 15 requested by contestants, is similar to charge No. 9, which was given in the *Bancroft v. Otis* case, *supra*. The principle of law asserted in the charge may be correct, but is necessarily abstract, and should be refused. The jury have no right to consider the question as to the character of a will an insane man would have made, had he possessed testamentary capacity. The question is purely speculative, and can not aid in determining the fact of sanity, *vel non.*

Several of the charges given for contestant upon the question of undue influence, are subject to criticism, but we have not considered it necessary to pass in detail upon them, as this feature of the contest will not arise upon another trial, unless there is additional evidence introduced.

The testimony of a witness, who attested the will should be weighed and considered as that of any other witness. The fact that he was an attesting witness, of itself, does not entitle his evidence upon a question of testamentary capacity to greater weight than he would otherwise be entitled to, except perhaps that by reason of his being an attesting witness, the law authorizes him to give his opinion of the mental capacity of the testator. Charge 21 should have been refused. If the person referred to as occupying confidential relations to testator is the wife, the charge is abstract. If it refers to other persons, *it* is abstract and erroneous as the wife is the sole beneficiary under the will. The executors were simply agents to execute it.—*Roberts v. Trawick*, 13 Ala. 80.

We will next consider the assignments of error upon the admission and exclusion of evidence. We think the proper rule as to non-experts testifying upon the sanity or insanity of a person may be stated as follows: Where there has been that long and intimate acquaintance with another to enable the formation of a correct judgment as to the mental condition of such other person, a witness may give his opinion that the person is of *sound mind.* Sanity is the normal condition of mankind. The witness with such opportunities, need not *in limine* be required to testify to the absence of facts which if existing would be

evidence of insanity, before giving his opinion that the person is sane. To authorize a non-expert to give his opinion of the existence of an unsound condition of mind he must not only have had the opportunity to form a judgment but the facts should be stated upon which it is based. The admission of opinion testimony is an exception to the general rule, and in our judgment. the ends of justice require in all cases where the opinion of a non-expert is admissible to show unsoundness of mind, that the facts upon which it is predicated should be stated. The case of *Stubbs v. Houston*, 33 Ala. 564 is not an authority adverse to the proposition. It is there stated "that it was competent for him to give his opinion in connection with facts deposed to by him." The former of the propositions was the question before the court in the case of *Ford v. State*, 71 Ala. 397.

The rule, as to the latter proposition, as we have stated it, was distinctly declared in *Roberts v. Trawick*, 13 Ala. 85; *Powell v. State*, 25 Ala. 21; *Florey v. Florey*, 24 Ala. 247. A non-expert however long or intimately acquainted who states no facts and circumstances, upon which the opinion is based, is not competent to testify that in his opinion a party is insane. The weight to be given to the opinion of a non-expert as to mental capacity, when admissible, will depend upon the extent and character of the impairment of the mind, the opportunity to know, the intelligence of the witness, and the reasonableness of the conclusion from the facts stated, and accompanying the opinion.—*Powell v. State*, *supra* 27. The rule is easily understood, and what we have said will be sufficient to guide the court on another trial.

There was no error in allowing the witness Lockwood to prove that Roden had made a contradictory statement. The predicate was laid, the question of fact material. It was for the jury to say how far the testimony of the witness Roden was impeached by the witness Lockwood. There was no error in allowing the question in rebuttal, to Lockwood: "If he had information that Darby knew important facts," &c. On cross examination this witness had been asked, "If he did not say he would give $100.00 to know, to what Darby would testify." Having answered in the affirmative, we can see no objection to the explanation. The declarations of Mrs. Torrey not made in the presence of Mr. Torrey, were mere hearsay, and not admissible as original evidence to prove any fact. As impeaching testimony there was no predicate for their introduction. It was not competent to prove property in Mrs. Torrey by a declaration of Mr. Torrey to the effect that it was his custom when he

[Burney v. Torrey.]

purchased property to take title of alternate purchases in her name. It was competent to prove by legal evidence, that he had provided for her, and the extent of the provision. It was also competent to prove that she assisted him to make the property, and his declarations to this effect. We are of opinion the court erred, in excluding the clipping from the Memphis newspaper. This may have been important testimony to either party upon the different issues. It appears that Warren Torrey had left his wife and two children at Cullman some ten or more years before the death of the testator. Not many years after he left his family, as Mrs. Torrey offered to testify, she received in a letter a clipping from a Memphis paper which was offered in evidence, and which was read by testator, to the effect that Warren Torrey had married again in that city. The letter was not produced. The court sustained an objection to the clipping, it would appear, upon the ground that it was hearsay. This clipping was not admissible as competent evidence to prove the second marriage as a fact. But why was it not competent as tending to account for the fact that testator made no provision for him in his will? If the clipping was true or believed by Mr. Torrey, it may have influenced his mind. On the other hand, if it was a fabrication gotten up to prejudice testator, and he was imposed upon by it, we are not prepared to say, such information, brought to him under such circumstances, was not admissible on the issues prosecuted. It would seem the facts proposed to be deposed to were admissible for either party. In the case of *South & North R. R. Co. v. McLendon*, 63 Ala. 266, it was held that a witness could testify that "plaintiff seemed to be suffering," she "looked bad," &c. Under the principle decided in that case, we hold, it was permissible for a witness to say that the testator "was childish," that his expression "was simple," that he was a "shrewd business man," &c. These words convey a distinct idea. On cross examination, the value or correctness of such conclusions may be brought out. We do not think however that the principle upon which these "short hand" rendering of facts are admissible can be extended, so far as to permit a non-expert witness to be asked for the purpose of showing unsoundness of mind, "Did he seem to have his mental faculties about him all the time," except it be first shown, that the witness had the opportunity to know, under the principles we have declared, accompanied with a statement of facts, upon which the opinion is based.

[Cooke v. Cook.]

For the errors pointed out the case must be reversed and remanded.

Reversed and remanded.