[S. F. No. 6169.   Department One.—March 24, 1913.]

In the Matter of the Guardianship of LOREN COBURN, an Incompetent Person; AZRO A. COBURN, Petitioner and Respondent; M. J. HYNES, as Guardian, etc., Respondent; LOREN COBURN, Appellant.

DISTRICT COURT OF APPEAL—VIEWS EXPRESSED BY SINGLE JUSTICES ON REVERSAL NOT LAW OF CASE.—Since the constitution (art. VI, sec. 4), requires the concurrence of all three justices of a district court of appeal to the pronouncement of a judgment by that court, the individual views expressed by one of the justices in an opinion rendered upon a reversal of a judgment, on particular points involved in an appeal, in which the other justices fail to concur, do not become the law of the case on a subsequent trial, or on a second appeal.

INCOMPETENT PERSON—PETITION FOR GUARDIAN—SUFFICIENT ALLEGATION AND FINDING OF INCOMPETENCY.—An allegation in a petition for the appointment of a guardian of an incompetent person, to the effect that he "is unable, unassisted, to properly manage and take care of his said property, and by reason thereof is likely to be deceived and imposed upon by artful or designing persons, and is mentally incompetent to manage his said estate; that he is mentally incompetent to manage his property, and that he is, by reason of old age and physical disability and weakness of mind, unable to take care of himself and manage his property," together with findings that he is "unable to properly manage or take care of himself and his property," are sufficient to justify the appointment of a guardian, under the provisions of sections 1763 and 1764 of the Code of Civil Procedure.

ID.—DEMURRER—REFUSAL TO PERMIT WITHOUT PREJUDICE.—A demurrer to such a petition must necessarily have been overruled, and the refusal to permit the alleged incompetent to file one was without prejudice.

ID.—PROCEDURE FOR OBTAINING APPOINTMENT OF GUARDIAN — LEGISLATURE MAY DEFINE.—The legislature has power to define the procedure to be followed in seeking and obtaining the appointment of guardians.

ID.—STATUTE DEFINING TERMS USED IN PRIOR STATUTES.—A statute purporting to define certain terms used in existing statutes are to be upheld, except with regard to past transactions, as an exercise of the legislative power to enact a law for the future.

ID.—DEFINITION OF INCOMPETENT IN SECTION 1767 OF CODE OF CIVIL PROCEDURE—STATUTE VALID AS TO SUBSEQUENT CASES.—Section

1767 of the Code of Civil Procedure, enacted in 1891, (Stats. 1891, p. 68), which declares that the phrase "incompetent," "mentally incompetent" and "incapable," as used in the existing chapter of that code governing the appointment of guardians of incompetent persons, "shall be construed to mean any person, who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof, would be likely to be deceived or imposed upon by artful or designing persons," is not invalid, as to cases arising subsequent to its enactment, as an attempted exercise by the legislature of the power belonging exclusively to the judiciary of interpreting a pre-existing statute.

ID.—CONSTITUTIONAL LAW—SUBJECT AND TITLE OF ACT.—The act adding section 1767 to the Code of Civil Procedure, which is entitled "An act to add another section to the Code of Civil Procedure of the state of California, relating to incompetent persons," is not obnoxious to the constitutional requirements that every act shall embrace but one subject, and that the subject of an act must be expressed in its title. The failure to designate in the title of the act the number of the section to be added to such code is immaterial.

ID.—AMENDMENT OF STATUTE BY IMPLICATION — RE-ENACTMENT OF AMENDED ACT NOT NECESSARY.—If the adoption of section 1767 amended the existing law as declared in the Code of Civil Procedure, it amended it by implication only. As to such an implied amendment, the constitutional provision (Const., art. IV, sec. 24), prohibiting the revision or amendment of an existing law by reference to its title, and requiring the re-enacting and publishing at length of the act revised or section amended, has no application.

ID.—SECTION 1767 OF CODE OF CIVIL PROCEDURE DETERMINES CONDITIONS JUSTIFYING APPOINTMENT OF GUARDIAN.—Section 1767 of the Code of Civil Procedure, as to cases arising subsequent to its enactment, is valid, and there can be no occasion to go beyond its terms to learn what conditions will justify the appointment of a guardian of an incompetent person.

ID.—CONSTRUCTION OF SECTION—INABILITY MUST BE MENTAL AND NOT PHYSICAL.—The language of that section should be construed in connection with the other provisions of the chapter of the code of which it forms a part, and particularly with the provisions of section 1763 thereof. So construed, the inability defined in section 1767, although not expressly so limited, must be understood to mean a mental, rather than a physical inability.

ID.—PHYSICAL ABILITY TO CARE FOR PERSON.—Under such sections, the fact that a person mentally incapable of taking care of his property was physically able to perform the acts necessary to the bodily

care of his person, does not prevent the appointment of a guardian for him.

ID.—EVIDENCE OF INCOMPETENCY—FINDINGS.—The evidence is held to sustain the findings of the trial court to the effect that all the allegations of the petition for the appointment of the guardian were true, and that the alleged incompetent, at the time of the filing of such petition was, for a long time prior thereto had been, ever since has been, and still is, "by reason of old age and weakness of mind, unable, unassisted, to properly manage and take care of himself and his property, and by reason thereof likely to be deceived and imposed upon by artful and designing persons," and that at all of such times he was and is "incapable of taking care of himself and managing his property."

ID.—PETITIONER MAY COMPEL INCOMPETENT TO BE WITNESS.—The petitioner for the appointment of a guardian for an alleged incompetent may, notwithstanding the latter's objection, call him as a witness and examine him. Section 1763 of the Code of Civil Procedure, in requiring that the alleged incompetent "must be produced on the hearing," seems to contemplate an examination.

ID.—EVIDENCE—TESTIMONY DETRIMENTAL TO INCOMPETENT IN OTHER LITIGATION.—Questions asked of the incompetent, in reference to matters relevant and otherwise competent, were not rendered objectionable because they compelled him to give testimony which might be detrimental to his interests in other pending litigation.

ID.—OPINION OF WITNESS AS TO MENTAL CONDITION—INTIMATE ACQUAINTANCE—DISCRETION.—In determining whether a witness, whose opinion is sought regarding the mental condition of the alleged incompetent, was an "intimate acquaintance," the trial court has a wide range of discretion, which was not abused in this instance.

ID.—IMPAIRMENT OF MEMORY.—An impaired memory, while it may not, in and of itself, establish incompetency, is an element to be considered.

ID.—SHOWING INTEREST OF PETITIONER — IMMATERIAL ERROR IN EXCLUDING EVIDENCE.—The petitioner for the appointment may be asked on cross-examination, for the purpose of showing his interest, how much money he had spent in the proceeding to have the person alleged to be incompetent so declared. The refusal to permit such question will be deemed to be without prejudice, when it was admitted that the witness had spent a large sum of money in that connection.

ID.—COURT MAY APPOINT PROPER PERSON GUARDIAN—PREFERENCE OF WARD.—In such proceeding the court is authorized to select a proper person to act as guardian, and it is not required, as in the case of the appointment of guardians of minors, to give any weight to the preference of the ward.

ID.—REFUSAL TO REOPEN CASE—NEWLY DISCOVERED EVIDENCE—BIAS
AND BAD REPUTATION OF WITNESS.—It was not an abuse of dis-
cretion for the trial court in this proceeding to refuse to reopen
the case, several months after its submission, upon the claim of
the alleged incompetent that he could introduce evidence, not there-
tofore obtainable, affecting the reputation of an important witness
for the petitioner, for truth, honesty, and integrity, and the bias
of such witness, where the court might have concluded, from the
affidavit offered in support of the motion, that all competent evi-
dence tending to show that the witness's reputation was bad could
have been obtained and produced upon the close of the trial, and
on the question of bias, the interest of the witness was not dis-
puted, and the new testimony proposed to be offered was not of
sufficient importance to warrant reopening the case.

ID.—JURY TRIAL NOT MATTER OF RIGHT—FAILURE TO DEMAND.—Such a
proceeding is not one of those in which the right of trial by jury
is absolutely guaranteed by the constitution, and, in the absence of
a demand therefor, no right of the alleged incompetent was in-
fringed by the action of the court in proceeding to a trial of the
issues without a jury.

APPEAL from a judgment of the Superior Court of San
Mateo County and from an order refusing a new trial. M. T.
Dooling, Judge presiding.

The facts are stated in the opinion of the court.

A. J. Treat, and A. Kincaid, for Appellant.

Ross & Ross, Sullivan & Sullivan and Theo. J. Roche, for
Petitioner and Respondent.

Cullinan & Hickey, for Guardian and Respondent.

SLOSS, J.—The superior court of the county of San Mateo
having entered a judgment or order appointing M. J. Hynes
guardian of the person and estate of Loren Coburn on the
ground of incompetency, the alleged incompetent appeals from
the judgment and from an order denying his motion for a
new trial.

The proceeding was instituted in February, 1908, when Azro
A. Coburn, nephew of Loren, filed a petition averring the
incompetency of his uncle and praying for the appointment
of a guardian. Upon a trial, the court found in favor of the

allegations of the petition, and appointed Carl Coburn, the adopted son of a brother of Loren Coburn, guardian of the latter's person and estate. An appeal prosecuted by the alleged incompetent resulted in a reversal by the district court of appeal for the first appellate district of the order appointing a guardian. (*In re Coburn*, 11 Cal. App. 621, [105 Pac. 924].)

The present appeals are based upon the result of a second trial of the same issues.

Before proceeding to a discussion of other questions, it may be well to dispose of the appellant's contention that certain views expressed by Cooper, P. J., in his opinion filed on the first appeal are to be given binding force as the "law of the case" in the consideration of the appeals now before us. It appears, from the report of the former decision, that the presiding justice declared his belief that the evidence was not sufficient to support the finding that Loren Coburn was incompetent. The opinion stated, as an additional ground for reversal, that the court below had erred in admitting certain testimony over the objection of the appellant. The associate justices (Hall and Kerrigan) concurred in the judgment. They expressly withheld their assent to the position that the finding of incompetency was not supported, but agreed that error had been committed in the admission of the testimony above referred to. Since the concurrence of all three justices is necessary to the pronouncement of a judgment by a district court of appeal (Const., art. VI, sec. 4) it is clear that the only matter decided by the court was that the aforesaid rulings on the admission of testimony were erroneous. Whatever Mr. Justice Cooper may have said regarding the sufficiency of the evidence as a whole, or of any part of it, to establish the incompetency of the appellant, was but the expression of his individual opinion, and could bind neither the court below upon a second trial, nor an appellate court upon a second appeal. Nor can any further effect be given to the views of the learned justice regarding the general principles of law governing the appointment of guardians for incompetent persons. The statement of these views was introductory to, or, rather, a part of, his argument designed to show the insufficiency of the evidence. His associates having expressly declined to assent to the conclusion that the evidence was in-

sufficient, they cannot be deemed to have concurred in any step of the reasoning by which that conclusion was reached. In what we have just said we are not to be understood as casting doubt upon the correctness of the legal propositions advanced by Mr. Justice Cooper in this connection. Our purpose is simply to point out that, whether they be sound or not, they are not now binding upon us as the law of the case. (See *Daggett* v. *Southwest Packing Co.*, 155 Cal. 762, [103 Pac. 204] ; *Turner* v. *Fidelity Loan Concern*, 2 Cal. App. 122, 141, [83 Pac. 62, 70].)

The allegations of the petition, as amended, were as follows: "That said Loren Coburn, is unable, unassisted, to properly manage and take care of his said property, and by reason thereof is likely to be deceived and imposed upon by artful or designing persons, and is mentally incompetent to manage his said estate. That he is mentally incompetent to manage his property; and that he is, by reason of old age and physical disability and weakness of mind, unable to take care of himself and manage his property." The court found that all of the allegations of the petition, and the amendment thereto, are true. It further found that, at the time of the filing of the original petition "Loren Coburn was, for a long time prior thereto had been, ever since has been, and still is, by reason of old age and weakness of mind, unable, unassisted, to properly manage and take care of himself and his property, and by reason thereof likely to be deceived and imposed upon by artful and designing persons"; and that at all the times stated, said Loren Coburn was and is "incapable of taking care of himself and managing his property."

The statutory provisions governing the appointment of guardians of incompetent persons are found in article II of chapter XIV of part III of the Code of Civil Procedure. Section 1763, the first section of this article, provides that "when it is represented to the superior court, or a judge thereof, . . . that any person is insane, or from any cause mentally incompetent to manage his property, such court or judge must cause a notice to be given to the supposed insane or incompetent person of the time and place of hearing the case, not less than five days before the time so appointed, and such person, if able to attend, must be produced on the hearing. . . ." Section 1764 reads: "If, after a full hearing and

examination upon such petition, it appear to the court that the person in question is incapable of taking care of himself and managing his property, such court must appoint a guardian of his person and estate, with the powers and duties in this chapter specified." Both of these sections, in substantially the same form which they now present, were parts of the code as originally adopted. In 1891 the legislature added section 1767, which declares that "the phrase 'incompetent,' 'mentally incompetent,' and 'incapable,' as used in this chapter, shall be construed to mean any person, who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons." The appellant contends that the act adding section 1767 to the code is, in various respects, in conflict with the constitution and therefore void. For the purpose of upholding the sufficiency of the petition and findings, both of which papers are assailed by the appellant, it is not necessary to look to section 1767. These papers contain everything necessary to justify the appointment of a guardian under sections 1763 and 1764. The petition alleges that Loren Coburn is "mentally incompetent to manage his property." These are the very words in which section 1763 describes the fact which is to be "represented" to the court in invoking its jurisdiction. And the findings follow the exact phraseology of section 1764, which directs the appointment of a guardian when it appears that the person in question is "incapable of taking care of himself and managing his property." (See *In re Daniels,* 140 Cal. 335, [73 Pac. 1053].) There can be no question of the power of the legislature to define the procedure to be followed in seeking and obtaining the appointment of guardians. Here, as we have seen, there was a strict compliance with the procedure thus outlined, so far as it concerned the contents of the petition and the findings upon which the order of appointment is to be made. This consideration affords a complete answer to the assignment of error based on the action of the court in declining to permit the alleged incompetent to file a demurrer to the petition after the disposition of the first appeal. If such a pleading was proper at that or at any stage of the pro-

ceeding, no prejudice could have resulted from the refusal to entertain a demurrer which must necessarily have been overruled.

It is earnestly insisted upon this, as it was upon the former appeal, that the evidence is insufficient to justify the finding of incompetency. In this connection the learned counsel for the appellant have entered upon an elaborate examination and review of cases decided in England and in various states of the Union, and from the authorities cited have drawn the conclusion that the appointment of a guardian for an adult person can be sustained only upon proof that that person is insane, or that his mental powers are impaired to such an extent as to authorize a finding that he is of unsound mind. With the exception of a few early cases, the authorities do not, we think, go so far as is claimed. We do not, however, feel ourselves called upon to analyze the rulings in other jurisdictions for the reason that, in California, the question must be decided in accordance with the rules enacted by the legislature. While, in considering the sufficiency of the petition and the findings, it was not necessary to rely upon section 1767, we think a decision upon the validity of that section is proper and useful as a means toward ascertaining what, under the law of this state, constitutes incompetency sufficient to authorize the appointment of a guardian.

Section 1767 is a statute which purports to define certain terms used in existing sections of the code. The first point made against the validity of section 1767 is that the act adding the section to the code is an attempted exercise by the legislative branch of the government of a power belonging exclusively to the judiciary; the power, that is to say, of interpreting a pre-existing statute. The appellant quotes, in support of his position, this passage from Cooley's work on Constitutional Limitations: "If the legislature would prescribe a different rule for the future from that which the courts enforce, it must be done by statute and cannot be done by a mandate to the courts which leaves the law unchanged, but seeks to compel the courts to construe and apply it, not according to the judicial, but according to the legislative judgment." (Cooley on Constitutional Limitations, 7th ed., 137.) But the decisions cited in support of this declaration, with one exception (*Governor* v. *Porter,* 5 Humph. (Tenn.) 165),

CLXV Cal.—14

seem, when the facts are examined, to go no further than to deny the power of the legislature to alter the construction of a statute in such manner as to affect rights existing when the declaratory statute was passed. (*People* v. *Board of Supervisors*, 16 N. Y. 424; *Reiser* v. *Wm. Tell Savings Fund Assoc.*, 39 Pa. St. 137; *Lambertson* v. *McClelland*, 2 Pa. St. 22; *Lincoln etc. Assoc.* v. *Graham*, 7 Neb. 173; *Union Iron Co.* v. *Pierce*, 4 Biss. 327, [Fed. Cas. No. 14,367].) The weight of authority supports what we think to be the true rule, i. e., that such declaratory or defining statutes are to be upheld, except with regard to past transactions, as an exercise of the legislative power to enact a law for the future. Immediately following the passage above quoted from Cooley, the learned author says: "But in any case the substance of the legislative action should be followed rather than its form; and if it appears to be the intention to establish by declaratory statute a rule of conduct for the future, the courts should accept and act upon it, without too nicely inquiring whether the mode by which the new rule is established is or is not the best, most decorous and suitable that could have been adopted." In *Stebbins* v. *Board of County Commrs.*, 4 Fed. 283, Mr. Justice Miller, sitting in circuit, referred to an act similar to the one before us in these terms: "While it might not be true that rights existing prior to the explanatory or declaratory statute will be affected by that declaratory statute, yet, inasmuch as Congress or any legislative body has a right to pass a law for the future that such a statute shall be held to mean so and so, while it may not affect past transactions, it is equivalent to the passage of a statute of that character for the future." (See, also, *Stockdale* v. *Insurance Companies*, 20 Wall. 323, [22 L. Ed. 348]; *Singer Mfg. Co.* v. *McCollock*, 24 Fed. 667; *State* v. *Board of Commrs.*, 83 Kan. 199, [110 Pac. 93].)

The other objections to the validity of section 1767 are also, we think, untenable. The section was added by an act (Stats. 1891, p. 68), entitled, "An act to add another section to the Code of Civil Procedure of the state of California, relating to incompetent persons." We see no force whatever in the claim that this statute fails to comply with the provision of article IV, section 24, of the constitution, that every act shall embrace but one subject. The term "incompetent

persons,'' which forms the subject of the act, describes one general class of persons, properly selected for legislative control. Nor is the act obnoxious to the constitutional requirement that the subject of an act must be expressed in its title. In *Carpenter* v. *Furrey,* 128 Cal. 665, [61 Pac. 369], and in *Deyoe* v. *Superior Court,* 140 Cal. 476, [98 Am. St. Rep. 73, 74 Pac. 28], this court upheld acts having title substantially similar to the title of the act under consideration. In each of these cases the act assailed added sections to one of the codes. The title did not differ from the one before us except that it stated the numbers of the new code sections. We are unable to see that this circumstance affects the question. The subject of the proposed legislation is disclosed, not by the number of the section or sections to be added, but by the words describing the nature of the enactment, as, in this case, the words ''relating to incompetent persons,'' or, in the Deyoe case, ''relating to actions for divorce,'' or, in *Carpenter* v. *Furrey,* ''relating to liens of mechanics and others.'' That the title of an act may be general, and need not embrace ''an abstract or catalogue of its contents'' is, of course, well settled. (*Abeel* v. *Clark,* 84 Cal. 226, [24 Pac. 383]; *Estate of McPhee,* 154 Cal. 385, [97 Pac. 878].)

Finally, the constitutionality of the act is questioned on the ground that it seeks to revise or amend an existing law (i. e., the Code of Civil Procedure) by reference to its title, instead of re-enacting and publishing at length the act revised or section amended. (Const., art. IV, sec. 24.) If the adoption of section 1767 amended the existing law as declared in the Code of Civil Procedure, it amended it by implication only, and it is established by our decisions that the constitutional provision relied upon has no application to such implied amendments. (*Hellman* v. *Shoulters,* 114 Cal. 136, 153, [44 Pac. 915, 45 Pac. 1057]; *Deyoe* v. *Superior Court,* 140 Cal. 490, [98 Am. St. Rep. 73, 74 Pac. 28].) Such, too, is the prevailing rule in other states which have a similar constitutional restriction. (*People* v. *Mahaney,* 13 Mich. 481; Cooley on Constitutional Limitations, 7th ed., 216 and cases cited.) In enacting section 1767, the legislature was not undertaking to alter the existing statute, but merely to clarify and make more certain the meaning and effect of those sections. If, in so doing, the construction which would otherwise have been given

to sections 1763 and 1764 was, to some extent, changed by the new legislation, the modification of the earlier statutes was not an amendment of them, within the meaning of the constitution.

Adopting the view, then, that section 1767 is a valid enactment, there can be no occasion to go beyond its terms to learn what conditions will justify the appointment of a guardian. The grammatical construction of the section is not above criticism, but defects in this respect, while they may enhance the difficulty of interpreting the enactment, do not impair its binding force. The test established by the section is whether or not the person in question is "unable, unassisted, to properly manage and take care of himself and his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons." This broad language must, we think, be read in the light of the other provisions of the chapter of which section 1767 is a part, and particularly of section 1763, which lays down the initial steps to be followed in seeking the appointment of a guardian. The petition must represent that the person is insane, or from any cause *mentally* incompetent to manage his property, and we take it that the inability defined in section 1767, although not expressly so limited, must be understood to mean a mental, rather than a physical inability. It is, under the section, immaterial how such inability has been produced. It may result from "old age, disease, weakness of mind, or from any other cause."

Applying the statutory rule to the record before us, it is not to be doubted that the evidence was such as to warrant the finding of the trial court which, in addition to what we have already commented upon, declared, in the exact words of section 1767, that Loren Coburn was, "by reason of old age and weakness of mind, unable, unassisted, to properly manage and take care of himself and his property, and by reason thereof likely to be deceived and imposed upon by artful and designing persons." It is unnecessary to enlarge upon the rule, so long settled and so well known as to be axiomatic, that the findings of a trial court upon disputed issues of fact are not to be overturned on appeal, unless they totally lack the support of substantial evidence. That rule is as applicable to a case of this character as to any other. It re-

quires us to uphold the assailed finding if there is in the record evidence, which, with the aid of all inferences reasonably to be drawn from it, tends logically to establish the conclusion embodied in the finding.

The record in the case at bar is very voluminous. The bill of exceptions, containing an abstract of the testimony and the rulings of the court, occupies but little less than three thousand pages of the printed transcript. It would, manifestly, be impracticable to attempt, in an opinion of this court, to even summarize the testimony of each of the witnesses. We must content ourselves with a brief statement of a few of the facts testified to, believing that a recital of these facts will suffice to establish the proposition that the court below was justified, under the statutory provisions in force in this state, in finding the appellant to be incompetent, and in appointing a guardian of his person and estate.

Loren Coburn was, at the time of the hearing, of the age of eighty-four years or thereabouts. He had, many years before, acquired large tracts of land in San Mateo County, where he resided, and in other counties. His holdings in San Mateo County were in excess of ten thousand acres, and his entire estate was, as is conceded on all sides, worth more than a million dollars. The San Mateo land has been leased, from time to time, in parcels, the tenants paying, in some instances, a cash rental, but more frequently a proportion of the crop grown. The petitioner attempted to show that the appellant had, for a long time, been defrauded of a considerable part of the return that should have come to him from tenants paying a crop rental. And while the showing on this point was not conclusive, we think there was enough testimony to justify the trial court in believing that Loren Coburn had not received his full due under his leases, and that his failure to exact a proper division of the crops was the result of his inability to count the number of sacks of grain harvested by the respective tenants. A great deal of testimony was offered with the purpose of showing that Coburn had been induced by one whom, as a reasonable man, he should have distrusted, to enter into an improvident contract relative to the cutting of timber on the Coburn lands. This transaction, and the resulting litigation, could not be detailed here without unduly extending this opinion. Suffice

it to say that the facts shown, as a whole, lend some support to the conclusions embodied in the findings of the court.

Loren Coburn himself was called as a witness by the petitioner, and examined and cross-examined at great length. One-fourth of the long record before us is taken up with the questions asked Mr. Coburn and his answers thereto. The respondents place great reliance upon these questions and answers as going far toward sustaining the finding of incompetency. Their position in this regard seems to us to be well founded. Giving to his testimony the construction which the trial court may reasonably be deemed to have given it, the examination disclosed that the appellant's memory is seriously impaired with respect to many matters directly affecting his personal and his property interests. He was unable to recall, at least when first questioned on these points, the name of his mother, the maiden name of his first wife, the name of his sister and that of one of his brothers, the fact that his father had been married twice, the month in which his own second marriage had taken place. He referred to the petitioner, Azro Coburn, his nephew, as Carl Coburn, who was the adopted son of his brother, and who was well known to him. He had but little recollection of the execution of two wills made by him after his second marriage, nor did he recall the attorney who had drawn the later of these documents for him. He had been involved in a great deal of important litigation in the years preceding the trial, but had a very shadowy knowledge of the nature and condition of the various actions which were pending or had been disposed of.

One of the strongest circumstances going to uphold the conclusion of the trial court is found in the appellant's execution of certain conveyances and leases, and his own statements, while on the stand, concerning these instruments. After Azro A. Coburn, who was a resident of Massachusetts, had come to California to look into the matters involved in this proceeding, and before the petition had been filed, Carl Coburn presented to Loren for his signature a conveyance to one Richards of the property in the city of San Francisco constituting the city hall site, a like conveyance to one Gayety of the New Year's Point Ranch, a large portion of Coburn's holdings in San Mateo County, one to Albion Weeks of other

valuable property in San Mateo County. There were also
presented to him leases of property in the town of Pescadero
which Coburn did not own (including the public school lot
and that occupied by the Catholic church), of the land in Oak-
land used as the station of the Southern Pacific Railroad
Company, and of a block of land in San Francisco in which,
too, Coburn had never claimed any interest. The purpose of
seeking the execution of these papers was, as Azro Coburn
testified, to ascertain whether the appellant was incompetent,
and to secure evidence on the point. Loren Coburn took the
various papers on the different occasions when they were
handed to him, looked at them as if he were reading them,
and executed them, one and all. In no instance did he re-
ceive or demand any consideration, except in the case of one
of the Pescadero leases, upon the signing of which five dol-
lars was paid him. When questioned concerning these papers,
the appellant denounced some of them as fraudulent, stat-
ing, as to others, that he had never signed them. The learned
trial judge, in commenting upon this phase of the case, used
the following pertinent language: "The fact that before
the inauguration of these proceedings he signed various deeds
and leases . . . might not be of so much importance if re-
spondent could explain in any way why he did so. But he
cannot, and upon this hearing, although they were the real
basis of the proceedings against him, he had but a hazy
recollection of ever having seen or heard of them before.
Counsel urges that he was tricked by a trusted agent, but
this is the explanation offered by counsel and not by respond-
ent; and if one trusted agent can procure the signing by
respondent of papers of this character, and about which, even
when called to his attention, he has no knowledge, and con-
cerning the execution of which he has no recollection, it is
not unlikely that another person securing his confidence could
do the same."

The foregoing summary is, in our judgment, ample to
show that there was evidence justifying the findings assailed.
We shall not, therefore, do more than refer to other points
brought out by the petitioner, such as the appellant's failure
of memory with respect to other matters than those already
mentioned, his belief, claimed by the respondents to be a
delusion. that the property owned by him in San Mateo

County extended for a number of miles to the north of his actual boundary, or the testimony of an expert alienist that, in his opinion, Loren Coburn was of unsound mind.

There was, to be sure, a great deal of testimony lending support to the claim that Loren Coburn had the mental capacity ordinarily found in a man of his years. His own examination disclosed, in many particulars, an understanding grasp of his situation, his relations to those about him, and his affairs. But other parts of his own testimony, and the remaining evidence offered to sustain the allegations of the petition were certainly such as to justify the trial court in its belief that the appellant had, in consequence of old age, suffered an impairment of his mental powers to such an extent as to make him incapable of directing his business and property in a rational manner. This, with the further showing indicating his vulnerability to the efforts of designing persons, clearly filled the measure of the statute.

The testimony may fairly be said to establish that the appellant was, considering his age, of at least normal physical health and vigor. It is argued that, for this reason, the finding that he was "incapable of taking care of himself" is without support. But we do not think the statute is designed to prevent the appointment of a guardian of a person mentally incapable of taking care of his property, unless he is also shown to be unable to perform the acts necessary to the bodily care of his person. As we have seen, the section (1763) providing for the petition requires only an allegation of incompetency "to manage his property." The following section authorizes an appointment if it appears that the person is incapable of "taking care of himself and managing his property." The phrase is in the conjunctive, and the requirement is fulfilled if inability in either direction is shown. And, finally, section 1767 defines an incompetent as one "unable . . . to properly manage and take care of himself *or* his property." The main purpose of the statute is the protection of property (*Commonwealth* v. *Schneider*, 59 Pa. St. 330) and we think the legislative view was that the inability to take care of himself necessarily results from the determination that the person is "insane, or from any cause incompetent to manage his property." In other words, the care of one's self means, not merely attention to the physical

needs of the body, but that control of one's actions and conduct which is exercised by a normal mind.

The appellant assigns a great many rulings as errors of law. We shall, very briefly, notice those that seem to possess any substantial importance.

It is argued that the court should not have permitted the petitioner, over the appellant's objection, to call the latter as a witness and examine him. But we see no reason why this could not be done. The code (sec. 1763) in requiring that the person alleged to be incompetent "must be produced on the hearing," seems to contemplate an examination. The point that he is compelled to be a witness against himself is not applicable to any but a criminal proceeding, which this is not.

Some questions were objected to on the ground that they called upon the appellant to give testimony which might be detrimental to his interests in other pending litigation. But we are cited to no authority, and we know of none, authorizing the rejection of testimony, relevant and otherwise competent, for this reason. The same thing may be said of certain questions objected to on the ground that they inquired into the appellant's private affairs.

The opinion of Azro A. Coburn regarding the sanity of Loren was given, over the objection that the witness was not shown to be an "intimate acquaintance." (Code Civ. Proc., sec. 1870, subd. 10.) But, in the determination of this preliminary question, the trial court has a wide range of discretion, and no abuse of discretion was shown in this instance.

Much of the documentary evidence objected to was offered and was admissible as a basis for testing the appellant's memory concerning important litigation or other transactions affecting his property interests. While an impaired memory may not, in and of itself, establish incompetency, it is an element to be considered.

The appellant was not permitted to ask Azro A. Coburn, on cross-examination, how much money he had spent in the proceeding to have Loren Coburn declared incompetent. The question was proper as tending to illustrate the interest of the witness, but, in view of the fact that it was admitted that the witness had paid all of the expenses of both trials, as well as of the former appeal, amounting to at least fifteen

thousand dollars, no real prejudice could have been caused to the appellant by the ruling.

Further exceptions to rulings on the admission or rejection of evidence are so numerous that they cannot be here detailed. All have, however, been examined, and we are satisfied that the rulings were either correct, or were not substantially prejudicial to the appellant. The record of the trial, as a whole, makes it very clear that the trial court was actuated by the desire to treat the appellant with absolute fairness and to show him every courtesy that his unfortunate situation called for.

The appellant suggested that if the court should appoint a guardian at all, it appoint his wife guardian of his person, and Union Trust Company of San Francisco, a corporation, guardian of his estate. The court, however, appointed M. J. Hynes, who was a stranger to the appellant, guardian of both person and estate. There was no error in this. The court is authorized to select a proper person to act as guardian (*Hallett* v. *Patrick*, 49 Cal. 590; *Guardianship of Sullivan*, 143 Cal. 462, [77 Pac. 153]), and there is no provision similar to that of section 1748 relative to guardians of minors, requiring the court to give any weight to the preference of the ward. The competency and fitness of Mr. Hynes are not questioned, and the court, in appointing him, cannot be said to have abused the discretion committed to it.

Nor did the court err in declining to permit the reopening of the case, several months after its submission, upon the appellant's claim that he could introduce evidence, not theretofore obtainable, affecting the reputation of Carl Coburn for truth, honesty and integrity, and the bias of said Carl Coburn. Such applications are addressed to the discretion of the court (*Miller* v. *Sharp*, 49 Cal. 233; *San Francisco Breweries* v. *Schurtz*, 104 Cal. 420, [38 Pac. 92]), and no abuse of that discretion is here shown. The court may well have concluded, from the face of the affidavit offered in support of the motion, that all competent evidence tending to show that Carl's reputation was bad, if such were the fact, could have been obtained and produced before the close of the trial. And, on the question of bias, the interest of the witness was not disputed, and the new testimony proposed to be

offered was not of sufficient importance to require the court to reopen the case.

No request was made for a trial by jury, and the case was tried by the court, without a protest or contrary suggestion from any one. It is now contended that the court should, of its own motion, have called a jury to try the issues, and that its failure to do so necessitates a reversal. Irrespective of the question whether a jury trial was or could be waived by the incompetent, a sufficient answer to the point made is that the proceeding is not one of those in which the right of trial by jury is absolutely guaranteed by the constitution. The constitutional provision secures the right to a jury trial only in cases in which the right existed at common law. (*Koppikus* v. *State Capitol Commrs.*, 16 Cal. 248; *Cassidy* v. *Sullivan,* 64 Cal. 266, [28 Pac. 234].) Generally speaking, it has reference to criminal cases, and to actions at law, as distinguished from cases of equity (*Pacific Ry. Co.* v. *Wade,* 91 Cal. 449, [25 Am. St. Rep. 201, 13 L. R. A. 754, 27 Pac. 768]), or special proceedings. (12 Ency. of Plead. & Prac. 239.)

As we have already had occasion to say, the present proceeding is not a criminal case. Nor is it an action at law. Whether it be regarded as of an equitable nature, or as a special proceeding in probate, it is not a case in which, at common law, an absolute right of trial by jury existed. (24 Cyc. 132; *Gaston* v. *Babcock,* 6 Wis. 503; *Shroyer* v. *Richmond,* 16 Ohio St. 455; *Hagany* v. *Cohnen,* 29 Ohio St. 82.) If it be of an equitable nature, the familiar rule is that the calling of a jury rests in the discretion of the court. If, on the other hand, it be viewed as a matter in probate, the only right to a jury trial that can possibly be claimed under the statute is conditioned upon the making of a demand. (Code Civ. Proc., sec. 1717.) It follows that, in the absence of a demand, no right of the appellant was infringed by the action of the court in proceeding to a trial of the issues without a jury.

We are not without appreciation of the importance of this proceeding to the appellant. It is a harsh necessity that compels a court to subject to the control of a guardian the person and property of a man who has, during a long life, displayed the capacity and frugality requisite to the acquisition and retention of so large an estate, and who still preserves, to a considerable degree, his native shrewdness. The effort of the

appellant, and of his very industrious and zealous counsel, to avoid this result, must appeal to the sympathies of every one. But when it is shown that the appellant's mental powers have deteriorated to such an extent as to unfit him for the management of his properties, and to render him a likely victim to the wiles of designing persons, it becomes the duty of the trial court to put him under guardianship, to the end that he may be protected not only from those who might seek to impose upon him, but from his own incapacity.

The judgment and order denying a new trial are affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.