[Civ. No. 14572. First Dist., Div. Two. July 27, 1951.]

SOPHIE ANDERSON, an Incompetent Person, etc., Respondent, v. EDWARD L. TORREY, Appellant.

Caldecott & Caldecott for Appellant.

E. H. Christian and John Jewitt Earle for Respondent.

GOODELL, J.—This action was brought on behalf of Sophie Anderson by Central Bank, guardian of her estate, to set aside four deeds which she had made to appellant. The complaint alleged the incompetency of the grantor and undue influence exerted by the grantee. The answer denied these allegations and by a separate defense alleged that three of the parcels were conveyed to appellant because during a period of over 10 years he had rendered to respondent "material aid, assistance and services in matters financial, business and personal, all without reward, consideration or reimbursement," and that the other parcel had been conveyed as payment in full for certain funds lent by him to respondent prior to her acquisition of that parcel.

The court found that for more than 15 months (preceding August 26, 1949) respondent had been mentally incompetent, also that for more than 10 years there had existed a confidential relationship between the parties; that appellant induced and persuaded respondent to make all four deeds, and that there was no consideration for any of them. The court also found against appellant on his separate defense respecting the fourth parcel. The judgment appealed from decreed that appellant reconvey the four parcels to respondent.

Parcel one as described in the complaint is situated in the city of Oakland, while parcels two, three and four are in the city of Alameda.

On June 3, 1948, respondent executed a grant deed conveying parcel four to appellant.

On July 9, 1948, she executed a gift deed conveying to appellant parcel two, and another gift deed conveying parcel three.

On July 19, 1948, she executed a gift deed conveying to appellant parcel one.

*On the incompetency ground* plaintiff alleged that "for more than four years . . . the mind of said Sophie Anderson has been and now is impaired to such an extent that she is mentally incompetent and unable, unassisted, to properly manage her property, or to take care of herself or her property; and by reason thereof she has been deceived and imposed upon by artful and designing persons, which facts were at all times herein mentioned well known to said defendant, Edward L. Torrey."

The answer denied this allegation generally and specifically. It will thus be seen that the incompetency issue tendered and joined in this action was (with the exception of the last quoted 16 words) essentially the same as that presented by the two earlier petitions for adjudication (see *Guardianship of Walters,* 37 Cal.2d 239, 245 [231 P.2d 473]) since the complaint substantially followed the language of section 1460 Probate Code and invoked the same test.

In its finding in favor of plaintiff on this issue the court followed the language of plaintiff's allegation, but fixed the duration of the mental impairment at "more than fifteen months" preceding the findings.

Appellant's contention on the incompetency issue is that the evidence is insufficient to support the findings.

*Guardianship of Walters, supra,* decided since the submission of this case was an appeal from an order which adjudicated incompetency, while this is an appeal from a judgment setting aside deeds on the ground, *inter alia,* of incompetency of the grantor. However, the rules governing both situations should be the same for reasons already given.

In this case the files and records of the underlying guardianship proceedings were introduced in evidence (although not brought up on this record.) It appears that the petition therein was filed by appellant on June 3, 1948, the hearing held on July 7-8, the minute order of adjudication entered on July 8 and the formal order on July 19, 1948. This case was tried about 13 months later and respondent was examined respecting a 1947 transaction. With respect to this time element the court in the Walters case said (37 Cal.2d 239, 249 (231 P.2d 473]) : "Evidence of conduct tending to show mental condition a reasonable time before the hearing is admissible on the question of competence [citations], and broad discretion is left to the trial court as to the character of such testimony and the period of time over which it may extend [citations]." In

the same case (p. 245), the court also said: "All conflicts and any reasonable doubt as to the sufficiency of the evidence must be resolved in favor of the order [citations]. In cases of this type, as in any other, we must uphold the findings of the trial court if there is any substantial evidence which, together with the aid of all inferences reasonably to be drawn from it, tends to support the judgment [citations]."

On June 3, 1948, the day on which the first deed was made, appellant filed in the Superior Court of Alameda County a verified petition for letters of guardianship of the estate of Sophie Anderson, alleging that she was incompetent. A cross-petition was then filed by Evelyn Pirro, the adopted daughter of Mrs. Anderson, seeking the appointment of Central Bank as guardian of the alleged incompetent. After a two-day hearing a minute order was made on July 8 denying appellant's petition for appointment as guardian but granting the Pirro petition for the appointment of Central Bank.

Five days later, on July 13, appellant and respondent intermarried.

The formal order adjudicating incompetency was signed on July 19 (from which no appeal was taken) and on that same day the fourth deed was made.

Evelyn Pirro and Martin Pirro, her husband, testified for the respondent, but the court characterized Mrs. Pirro's testimony as "very unsatisfactory." Appellant was then called by plaintiff under section 2055, Code of Civil Procedure. *Respondent testified as a witness for appellant,* and appellant testified again on his own behalf.

The daughter testified that her mother, who gave her age as 72, was really 82 or 83. Appellant is somewhat younger.

Appellant had been a roomer in respondent's home continuously since 1926 and they had been close friends all those years. The judge carefully examined appellant respecting the verified petition which he had filed on June 3, wherein he alleged that "the mind of Sophie Anderson is impaired to such an extent that she is mentally incompetent and unable, unassisted, to properly manage her property or to take care of herself." Appellant's explanation was that he had signed the petition under duress and on the advice of his former attorney (who had died before the trial) and that he had vigorously protested against the allegation therein alleging incompetency. He answered that that allegation was untrue; that respondent was competent at all times herein involved.

In the latter part of 1947 respondent borrowed from a San Francisco bank $12,000 which, according to her son-in-law,

respondent on her own suggestion had lent him wherewith to go into business. He testified that it was being repaid at the rate of $120 a month as he had promised. When questioned respecting this transaction respondent testified that she had not borrowed any money from any bank within the past two or three years. When asked if she had lent any money to the Pirros in 1947 she answered "I didn't lend them, but they went to help themselves." Her testimony, judging from the record, indicated a confused mental condition. Respondent's testimony, and the manner in which she gave it, and particularly her forgetfulness of the $12,000 transaction, undoubtedly weighed heavily in the court's decision.

With respect to the examination of an alleged incompetent the Supreme Court said in *Guardianship of Walters, supra,* 37 Cal.2d 239, 249: "In addition the trial judge was entitled to consider appellant's behavior on the stand. He observed her and the manner in which she testified at the hearing and was in a better position than we are to pass upon her mental condition. (See *Estate of Cowper,* 179 Cal. 347, 348-349 [176 P. 676]; *Estate of Schulmeyer,* 171 Cal. 340, 343-344 [153 P. 233]; *Estate of Coburn,* 165 Cal. 202, 214-217 [131 P. 352]; *Guardianship of McConnell,* 26 Cal.App.2d 102, 106 [78 P.2d 1043].)"

*Guardianship of Walters* and the four cases just cited were all appeals from order adjudicating incompetency, while this is an appeal decreeing reconveyances because the transfers had been made by an incompetent person. There is no reason, however, why the rule should not be the same in both instances. These cases emphasize the importance of the opportunity of the trier of fact to observe the appearance and behavior of the alleged incompetent on the stand. In the Coburn case, *supra,* 165 Cal. 202 at 217 the court points to section 1763, Code of Civil Procedure, which required that the alleged incompetent "must be produced on the hearing." Section 1461, Probate Code, now requires that "Such person, if able to attend, must be produced at the hearing . . ."

No problem is now presented respecting the production of the incompetent as a witness, since she was called to the stand by her husband, the appellant. But since the principal issues were substantially the same as they had been on the hearing for adjudication, there is no reason why the rule with respect to her behavior on the stand and the court's opportunity to observe her, should not be the same as in guardianship cases.

The testimony of Martin Pirro respecting the mental capa-

city of his mother-in-law is characterized by appellant as worthy of but little weight, since he based his opinion almost entirely on the fact that there had been an adjudication, and it must be conceded that his testimony alone would probably not have supported a judgment for plaintiff. The testimony of his wife was characterized by the court as ''very unsatisfactory,'' and it seems clear from the record that the plaintiff's case was in precarious shape until appellant was called by plaintiff as an adverse witness. His examination under section 2055 has been already described, and the court then had before it the person who, because of his intimate relationship with respondent knew more about her mental condition than any other person. It was he who initiated the incompetency proceedings (before their marriage), and the fact that on the same day that the first deed was made, appellant started those proceedings and alleged under oath that she was then incompetent, must have weighed heavily with the court. That it did, appears from the court's remarks in deciding the case from the bench immediately on its submission. Appellant's testimony that respondent was at all times of sound mind, when compared with his verified charge on June 3, 1948, that she was so mentally impaired that she needed a guardian, was, judging from the outcome, entirely discarded by the court. This, of course, was a conflict wholly within the trial court's province.

There remained, then, no witness on appellant's side from whose testimony any conclusion could be drawn, one way or the other, except respondent herself, and we have already commented on that, and particularly on the court's observation of her.

These two pieces of evidence, namely, appellant's own sworn allegation of June 3 treated as an admission and his conduct in connection therewith, plus the testimony given by respondent as appellant's witness, were, in our opinion, ample to sustain the finding of incompetency at the times when the four deeds were made.

It is not necessary to decide herein whether the adjudication of incompetency became effective at the time when the minute order was entered on July 8, so that thereafter respondent had not the legal capacity to make a conveyance (Civ. Code, § 40), or whether its effective date was July 19, 1948, when the formal adjudication was signed and entered. This for the reason that if the trial court decided that respondent was incompetent on June 3, 1948, the date of the first deed,

and the date on which appellant himself alleged her incompetency, a finding of her incompetency on July 9 when the next two deeds were made and on July 19 when the last deed was made, would have ample support, in the absence of evidence of some intervening change of mental condition, of which there was none. Moreover the files and records in the guardianship proceedings were before the trial court, but just what they showed is not before us.

■ *On the issue of undue influence,* as in the case of the incompetency issue, appellant attacks the findings as unsupported by sufficient substantial evidence.

Appellant testified that he was a business associate of respondent; that she reposed great confidence in his judgment, and that whenever she requested it he advised her on her business affairs. In his verified answer he alleged that for over 10 years he had rendered to respondent "material aid, assistance and services in matters financial, business and personal, all without reward, consideration or reimbursement." Thus by his own testimony and admissions of record in his pleading, there is to be found at least some evidence of a confidential relationship. Respondent's daughter testified that her mother did not discuss business with her, and that discussion of business affairs by respondent with appellant were carried on "behind closed doors." The evidence of a confidential relationship by no means stops there, since appellant made an admission, referred to in respondent's brief and on oral argument, which, perhaps, furnished a sufficient basis for a presumption of a confidential relationship of more than five years duration under the holding in *Holmes* v. *Holmes,* 98 Cal.App.2d 536, 538 [220 P.2d 603] ■ (which cites *Fieg* v. *Gjurich,* 163 Cal. 740 [127 P. 49] ; see, also, 12 Cal.Jur. p. 716, note 16.

Appellant concedes "that the law presumes a confidential relationship to exist between a husband and wife" (citing Civ. Code, § 158) but adds that "there is no such presumption prior to the marriage and the existence of a confidential relationship for that period must be proved as a fact." That concession would place the deed of July 19 in one category (since the marriage took place six days before) but would place the deeds of June 3 and July 9 in another, since they were made before the marriage. If the rule of *Holmes* v. *Holmes, supra,* is applicable herein then a confidential relationship presumably had existed for more than five years before July, 1948, which would place all four deeds in the same category.

Subdivision 2 of section 1575 Civil Code says that undue influence consists "In taking an unfair advantage of another's weakness of mind" which provision, of course, links the two issues in this case, bringing to bear on the undue influence issue all the testimony discussed earlier on incompetency including, of course, that of the respondent herself and her behavior and appearance while testifying.

There can be no question that there was abundant evidence to sustain the findings respecting undue influence.

It is suggested that respondent had independent advice because a notary public was called in by respondent (not by appellant) to draw the deeds. The notary was not called as a witness, hence there is no evidence of what was said by respondent or by himself, and respondent's testimony does not shed any light on that subject. She could not even remember the notary's name. Appellant testified that he was not present when the deeds were made, hence he could not testify as to independent advice. There is nothing in the record to show that the notary did anything beyond drafting the conveyances, taking the acknowledgments, affixing his certificates, and impressing his seal.

Moreover, on the issue of undue influence the court could take into consideration, and doubtless did, the coincidences in dates, i.e., the first deed synchronizing with the institution by appellant of the guardianship proceeding which eventuated in respondent's adjudication; the next two deeds on July 9, executed a day after the close of the hearing and the entry of the minute order, but before the formal order of adjudication, and the last deed on the same day as the formal order. All were made while the guardianship proceedings were pending or just completed and while appellant occupied a fiduciary relationship toward the grantor.

In deciding the case the court said: "I think that the confidential relationship has been established and . . . I think the law is that if there is a confidential relationship established and activity of the grantee in connection with getting a deed, that there is a presumption that they were obtained by reason of undue influence." The court correctly stated the law (*Estate of Cover*, 188 Cal. 133 [204 P. 583]; Civ. Code, § 2235), and with no evidence to rebut the presumption the court's conclusion inevitably followed.

The judgment is affirmed.

Dooling, J., concurred.