(76 South. 111)
WEAR v. WEAR et al. (6 Div. 123.)

(Supreme Court of Alabama. Dec. 21, 1916. Rehearing Denied May 31, 1917.)

1. WILLS ⚮282—MENTAL CAPACITY—PLEADING.

Contestants' allegations that testator was of unsound mind when executing his will *held* sufficient to raise the question of decedent's mental capacity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 640.]

2. WILLS ⚮282 — UNDUE INFLUENCE — PLEADING.

Contestants' allegations that testator was under the control of certain persons when executing his will, and that the will was the result of undue influence exercised by them, sufficiently raises the question of undue influence as against a demurrer.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 640.]

3. WILLS ⚮282—FRAUD—PLEADING.

Contestants' allegations that the will's execution was procured by fraud of certain persons, specifying alleged fraudulent misrepresentations made by them, *held* sufficient.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 640.]

4. TRIAL ⚮240—REQUESTED INSTRUCTIONS—NECESSITY OF GIVING.

A requested instruction that there is no evidence of certain facts, or supporting a particular proposition, need not be given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 561.]

5. TRIAL ⚮253(3)—INSTRUCTIONS—IGNORING ISSUES.

A requested instruction to find for proponent on the question of testator's mental capacity, if the jury believes the evidence, is properly refused, where undue influence was also an issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 616.]

6. TRIAL ⚮253(3)—INSTRUCTIONS—IGNORING ISSUES.

A requested instruction that, if testator's mind was sound, etc., the issues should be found in favor of proponent, was properly refused, where undue influence was also an issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 616.]

7. TRIAL ⚮240 — ARGUMENTATIVE INSTRUCTIONS.

Requested instructions defining undue influence *held* properly refused, because argumentative.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 561.]

8. WILLS ⊕⟶332 — UNDUE INFLUENCE — INSTRUCTIONS.

In a will contest, instructions that undue influence must be determined by the effect produced, rather than the means used, and that it may be caused ·by physical force, mental coercion, or importunity, etc., *held* proper.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 785.]

9. EVIDENCE ⊕⟶472(8), 506 — MENTAL CAPACITY—OPINION EVIDENCE.

In a will contest, neither an expert nor nonexpert witness can give an opinion as to whether testator was mentally competent to execute the will.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2194, 2309.]

10. EVIDENCE ⊕⟶498½—PROVINCE OF COURT AND JURY—QUALIFICATION OF WITNESS.

Whether a nonexpert witness is qualified to give an opinion upon the soundness of testator's mind rests in the sound judicial discretion of the trial court.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2290, 2291.]

11. APPEAL AND ERROR ⊕⟶971(2)—DECISIONS REVIEWABLE—DISCRETION OF TRIAL COURT.

A trial court's decision as to whether a nonexpert witness was properly qualified to give an opinion regarding testator's soundness of mind will not be reversed, unless plainly erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3852.]

12. EVIDENCE ⊕⟶501(3)—MENTAL CAPACITY—OPINION EVIDENCE.

In a will contest for lack of mental capacity, a properly qualified nonexpert witness may state whether the testator was capable of transacting ordinary business, provided, if his answer be negative, the facts upon which his opinion is based are also stated.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2297.]

13. WILLS ⊕⟶53(1)—MENTAL CAPACITY—ADMISSIBILITY OF EVIDENCE.

Testimony that the testator's mind did not possess its full strength when the will was made *held* admissible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 111, 112, 126, 130.]

14. EXCEPTIONS, BILL OF ⊕⟶26 — CONSTRUCTION.

Equivocal statements in a bill of exceptions are resolved against the exceptor.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 33.]

15. EXCEPTIONS, BILL OF ⊕⟶26—CONSTRUCTION—RESERVING GROUNDS FOR REVIEW.

An objection that a question called for witness' opinion "and not properly qualified" refers to the witness' qualifications, and not to the point that the question was not properly limited as to time, under the rule that equivocal statements in a bill of exceptions will be resolved against the exceptor.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 33.]

16. APPEAL AND ERROR ⊕⟶1050(1)—HARMLESS ERROR—ADMITTING EVIDENCE.

Any error in admitting evidence regarding testator's ability to transact business is harmless, where witness stated he hardly knew, but supposed it would depend on the kind of business.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

17. EVIDENCE ⊕⟶501(3)—MENTAL CAPACITY—OPINION EVIDENCE.

A nonexpert witness' opinion that testator was mentally incapable of transacting ordinary business is inadmissible, where the facts upon which such opinion was based were not stated.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2297.]

18. APPEAL AND ERROR ⊕⟶232(2)—RESERVING GROUNDS FOR REVIEW—OBJECTIONS.

An objection that a witness was not qualified to answer a question saves that point for review, although the question was thereafter qualified in another respect before being answered, and the objection was not renewed to the amended question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1430, 1431.]

19. WILLS ⊕⟶53(4)—MENTAL INCAPACITY—ADMISSION OF EVIDENCE.

Where there is other proof tending to establish testator's mental incapacity, evidence that his ancestors and blood relatives became insane is admissible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 122.]

Sayre, J., dissenting.

Appeal from Probate Court, Jefferson County; J. P. Stiles, Judge.

Probate proceeding by C. N. Wear to establish the will of William T. Wear, deceased, which was contested by O. S. Wear and others. From a decree denying probate, the proponent appeals. Reversed and remanded.

The contest was as follows:

(1) That said W. T. Wear was of unsound mind at the time of the alleged execution of the paper purporting to be his last will and testament.

(2) That W. T. Wear, at the time of the making of said paper purporting to be his will, was under the domination and control of C. N. Wear and his wife, Mary J. Wear, or either of them, and that the will is the result and product of the undue influence exercised by them, or either of them, over the mind of said W. T. Wear, deceased, and was not the result of the exercise of his free volition.

. (3) That said will was not duly executed by said W. T. Wear, and that the execution of said paper was procured by the fraud of C. N. Wear, in this: That said W. T. Wear was a man of old age, and suffering from physical and mental 'weakness due to senility, and that C. N. 'Wear was the son 'of W. T. Wear; that said W. T. Wear was living in a house by himself, near the home of C. N. Wear, and that said C. N. would visit W. T., and would persuade him that the lands owned by said W. T. did not exceed in value $600, and that it would be equitable, owing to the value of the land not being in excess of $600, to will said land to C. N. Wear, and to will O. S. Wear, Mrs. Partain, and Belle Nabers each the sum of $600 in money, well knowing that his statement to his father was false, and that the land he sought to secure, and did procure his father to will to him, greatly exceeded in value the sum of $600. And your petitioners aver as facts that at the time of the procuring and execution of said paper, purporting to be the will of said W. T. Wear, it greatly exceeded the value of $600, and was at said time and is now of the value of $4,000; that at the time that said representations of the value of said land were' made to him by said C. N. Wear, W. T. Wear was a man old, feeble in health, and with his mind impaired by his advanced age, and he relied upon the representations of his said son as to the

value of said land, and as to the equitable disposition of the property, on the basis of each receiving an equal distribution.

The following charges were refused to proponent:

(49) The court charges the jury that, if they believe the evidence in this case, they must find a verdict for proponent on the issue of the soundness of mind of the testator.

(41) If the jury believe from the evidence that, at the time when the paper propounded for probate by C. N. Wear as the last will and testament of W. T. Wear was executed by said W. T. Wear, and witnessed by B. Moore and W. L. Everett as subscribing witnesses thereto, the said W. T. Wear had mind and memory sufficiently sound to know and understand the business in which he was engaged, then he possessed testamentary capacity, and they should find the issues in favor of the proponent.

(77) The court charges the jury that it is a great mistake of the principles of law under consideration, as applicable to wills, to suppose that a person who, by forethought and affectionate attention and provisions for the wants of another, and by integrity, acquires the confidence of such person, and the controlling influence over him, using no deceit, is in the exercise of what in law is termed undue influence. Such a doctrine would place a premium on neglect and indifference, and rob virtue of its reward.

(81) The court charges the jury that, although the evidence may show or tend to show some impairment of the mind, if testamentary capacity remains, the fact that there has been an unequal distribution of the property does not authorize the conclusion that such distribution was the result of fraud or undue influence. There must be other evidence tending to show that the will of the testator was unduly coerced, or that there was fraud or deceit practiced in its procurement. To hold otherwise would lay down a principle which would authorize the setting aside of every will on the ground of fraud or undue influence, when any impairment of mental vigor was shown, although the testator possessed such mental capacity, unless the disposition of the property accorded with what in the opinion of the jury it should have been.

The following charges were given for the contestants:

(1) It is not the means employed, so much as the effect produced, which must be considered in determining whether undue influence has contributed to the making of the will; for, though the influence exerted over the testator was such as if, under ordinary circumstances or the exercise of persons of ordinary powers of resistance, would be regarded as innocent, yet, if in the particular case it resulted in a disposition of the property contrary to the testator's desire, the influence was undue.

(3) Whether the free agency of the testator is destroyed or mastered by physical force or mental coercion, by threats occasioning fear, or by the importunity which the testator is too weak to resent, or which exhorts compliance in the hope of peace, is immaterial. In considering the question, therefore, it is essential to ascertain as far as practicable the power of coercion on the one side, and the liability to influence on the other, and whenever, through weakness, ignorance, dependence, or implicit reliance of one on the good faith of another, the latter obtains an ascendancy which prevents the former from exercising an unbiased judgment, undue influence exists.

J. H. McNeill, George D. Finley, and Horace C. Wilkinson, all of Birmingham, for appellant. Beddow & Oberdorfer, of Birmingham, for appellees.

McCLELLAN, J. This is an appeal from a decree, following verdict of a jury, denying probate to a paper, of date November 30, 1914, propounded as the last will and testament of William T. Wear, deceased. The probate was prayed by C. N. Wear, a son of the decedent, who was named executor thereof. The contestants were O. S. Wear and Mrs. Partain, children of the decedent, and Mrs. Nabers, a daughter of a long-deceased child of the decedent. The report of the appeal will contain all of the grounds of contest, viz.: Nos. 1, 2, and 3.

[1-3] There can be no doubt of the sufficiency of the first ground of contest, which averred the want of decedent's mental capacity, at the time, to validly execute a will. Barksdale v Davis, 114 Ala. 623, 627, 22 South. 17, treating ground B there considered. The second ground, which asserted the invalidity of the instrument because of undue influence, itself a manifestation of fraud, practiced on the decedent by the proponent beneficiary, C. N. Wear, and his wife, or either, was not subject to the demurrer. Coghill v. Kennedy, 119 Ala. 641, 655, 24 South. 459. It is obvious that the charge of fraud asserted in the third ground was entirely justified by the allegations of fact upon which that charge was rested. The general rule of Barksdale v. Davis, 114 Ala. 623, 22 South. 17, touching the sufficiency of allegations of fact to justify such a charge, was fully met in the averments of ground 3. There was no error in the rulings on the pleadings.

Prior to November 4, 1914, the decedent, a man 79 years of age, was the owner of two tracts of land—one, the "home place," containing 140 acres, and one, the "ridge place," containing 40 acres. At that time, and at the time of his death in March, 1915, the decedent had about $1,800 on deposit in a bank. Reckoning his granddaughter, Mrs. Nabers, as representing a deceased child, decedent had four heirs, the proponent and the contestants. It appears from the evidence that on November 4, 1914, decedent made a conveyance of all the land to C. N. Wear; there being evidence tending to show that decedent's original purpose was to value the 140-acre tract at $600 and to give that tract to C. N. Wear as his part of the decedent's estate, the other of his heirs to be given $600, respectively, out of the money on deposit in bank. It is indicated in the testimony that the consideration recited in the conveyance was $600. When the deed was being written out, the description of the other—the 40-acre—tract was also included, thus, if effectual, transmitting on November 4, 1914, to C. N. Wear all of the land then owned by the decedent. The paper propounded for probate purports to devise to C. N. Wear this same land. This paper was attested by two witnesses on November 30, 1914, about 26 days after the conveyance was executed. There is

testimony tending to show that the paper propounded for probate was prepared by an attorney and delivered by C. N. Wear to his father on November 11, 1914.

[4] At this point assignment of error No. 14, predicated of the trial court's refusal to give a special written instruction wherein the proponent (appellant) sought to have the jury advised that there was "no evidence" of a particular fact, or to support a particular proposition, may be eliminated. It has been long settled that trial courts are not required to declare to juries that there is no evidence of particular facts or supporting a particular proposition, and it is not error to refuse such requests for the instruction of juries. Troup v. State, 160 Ala. 125, 127, 128, 49 South. 332, and Coal Co. v. Kilgore, 162 Ala. 642, 655, 50 South. 205, among others.

[5] The court did not err in refusing the special charge numbered 49 (assignment 17) requested for proponent. It was bad in form, in view of the fact that there was another issue before the jury. N. & O. R. R. v. George, 94 Ala. 201, 221, 222, 10 South. 145; Kress v. Lawrence, 158 Ala. 652, 655, 656, 47 South. 574. The standard established in this state whereby mental capacity to make a will is measured was thus very well set down in Schieffelin v. Schieffelin, 127 Ala. at page 37, 28 South. at page 694:

"Incapacity to transact the ordinary business of life cannot, as is well settled, be made the standard of testamentary capacity. We apprehend the court in an explanatory charge laid down the rule correctly, that if testatrix, 'at the time of the execution of the instrument, had mind and memory sufficient to understand the business she was engaged in, to remember the property she was about to bequeath, the objects of her bounty, and the manner in which she wished to dispose of it [she had testamentary capacity], and if, at the time of executing said instrument, this test was lacking [she was without such capacity].' This is the standard declared in many of our decisions."

[6] Charge 41 (assignment 21) was refused without error, because the last phrase rendered it subject to the criticism, in respect to form, to which reference was made in treating charge 49, ante. The decision in Schieffelin v. Schieffelin, supra, was that it was not error to give a similar charge (see charge 33 there).

[7] Charges 77 and 81 (assignments 15 and 16) were copied from the opinion in Burney v. Torrey, 100 Ala. 168, 170, 14 South. 685, 46 Am. St. Rep. 33. Both are argumentative in character and effect, and were well refused on that account. It is a mistake to suppose that expressions in judicial opinions, properly there used, can be made to serve as clear, succinct statements of the law in special charges to the jury. K. C. & M. B. R. R. Co. v. Matthews, 142 Ala. 298, 39 South. 207.

[8] Charges 1 and 3 (assignments 18, 19), given at the instance of contestants, have been approved in the following decisions: Coghill v. Kennedy, 119 Ala. 666, 24 South. 459, treating charges e and h; Leverette v. Carlisle, 19 Ala. 80; Smith v. Smith, 174 Ala. 205, 211, 56 South. 949.

[9] Charge 4, given upon request of contestants, is as follows:

"The court charges the jury that, if you believe from the evidence that the will was obtained by the exercise of influence amounting to coercion, then you must find that the will was obtained by undue influence."

This instruction appears to be free from fault; but, if it was subject to any criticism, its fault was favorable to appellant.

[10-12] This court has long been fixed in its opinion that, on the trial of a contest of a will on the ground of the decedent's mental incapacity to execute his will, neither an expert nor a lay witness should be permitted, over appropriate objection, to testify that the subject of the inquiry was or was not mentally capable of executing a will. Walker v. Walker, 34 Ala. 469; Council v. Mayhew, 172 Ala. 295, 306, 55 South. 314. In Walker v. Walker, supra, it was forcibly, broadly, declared that all evidence which tends to shed light on the decedent's "mental status—the clearness and soundness of his intellectual powers"—should be received for its service in aiding the trior of the fact to determine the issue of mental capacity vel non, of the decedent to execute his last will and testament. In this jurisdiction it has always been the practice to receive as evidence on that issue the opinions of properly qualified laymen, whether the opinion was that the mind of the subject of the inquiry was sane or insane, sound or unsound; but where the lay witness is called to give his opinion that the decedent was insane, or that his mind was unsound, a condition precedent to the admissibility of such an opinion is that the nonexpert witness "must not only have had the opportunity to form a judgment" with respect to the decedent's mental status, "but the facts should be stated upon which it is based." Burney v. Torrey, 100 Ala. 157, 172-173, 14 South. 685, 46 Am. St. Rep. 33. Whether the opinion is favorable or unfavorable to the decedent's sanity, the nonexpert witness must be shown to have had opportunity to observe the mental status of the decedent in such sort as to enable the formation of a correct judgment. Burney v. Torrey, supra. Whether a witness is qualified to deliver a nonexpert opinion, favorable or unfavorable, upon the issue of soundness or of unsoundness of decedent's mind, is a question submitted to the sound judicial discretion of the trial court—a discretion not reversible unless plainly erroneous. White v. State, 133 Ala. 122, 32 South. 139; Sandlin's Case, 125 Ala. 585, 28 South. 40; Insurance Co. v. Stephens, 51 Ala. 123; Ala. C. & I. Co. v. Heald, 168 Ala. 626, 643, 644, 53 South. 162; L. & N. R. R. Co. v. Elliott, 166 Ala. 419, 52 South. 28. Jones on Ev. § 369. Since, to lay witnesses at least, unsoundness of mind can only be disclosed through the appearance and outward manifestations of

mental processes of the person under investigation, it is chiefly, if not entirely, through the means of opinions and conclusions that such witnesses can be made available to the solution of the issue.

May a qualified nonexpert witness testify that a decedent, whose mental status is under inquiry, was incapable of transacting ordinary business or of understanding the details of ordinary business at or about the time he is alleged to have executed his last will and testament? The mental capacity or the absence of mental capacity to conduct or to manage ordinary business or its affairs is not itself a test or standard by which to measure a testator's mental capacity to execute a will. Stubbs v. Houston, 33 Ala. 555, 566, 567; Schieffelin's Case, 127 Ala. 14, 37, 28 South. 687; Kramer v. Weinert, 81 Ala. 414, 416, 1 South. 26. While there are some decisions to the contrary, this court is of the opinion that the fact that a decedent was capable or was incapable of transacting ordinary business at or about the time in question is a serviceable circumstance bearing upon the issue of his mental status. 14 Ency. of Ev., pp. 296, 297, and notes; 37 L. R. A. (N. S.) pp. 596-598. In White v. Farley, 81 Ala. 563, 567, 8 South. 215, Torrey v. Burney, 113 Ala. 496, 505, 21 South. 348 (second appeal) Burney v. Torrey, 100 Ala. 157, 174, 14 South. 685, 46 Am. St. Rep. 33 (first appeal), Stubbs v. Houston, 33 Ala. 555, 567, and In re Carmichael, 36 Ala. 514, third headnote, this court plainly recognized the efficiency of that fact to contribute to the solution of the issue of mental capacity vel non to execute a will. Treating an instruction to the jury on the trial of the contest of a will this court, in Stubbs v. Houston, supra, condemned the proposal that capacity to transact ordinary business was a standard of mental capacity to execute a will, and concluded the discussion with this manifestly sound expression:

"Certainly an incapacity to transact the ordinary business of life would afford ground for an argument to the jury, but it cannot, consistently with reason or law, be made the standard of testamentary capacity."

This distinction between a standard fixed by law and evidence tending to prove that the legal standard was or was not attained in the concrete case under inquiry defines the sphere of operation and effect of the two rules to which we have adverted. Now, by what means, under what method, may the presence or absence of a decedent's mental capacity to transact ordinary business be shown to the trior of the issue? This is the question upon which this court has delivered expressions that appear, at least, to be contradictory. To illustrate: At page 174 of 100 Ala. (14 South. 691, 46 Am. St. Rep. 33), first appeal of the Burney Case, it was pronounced that "under the principle delivered" in Railroad Co. v. McLendon, 63 Ala. 266, "we hold it was permissible for a witness to say that the testator * * * *was a*

'shrewd business man'" (italics supplied); but, on the other hand, it was ruled in Ex parte Carmichael, 36 Ala. 616, that a witness, well acquainted with the man whose mental status was under investigation on an inquisition of lunacy, was erroneously permitted to testify that the person was "incompetent to manage his office and take care of himself," and this for the reason that the statement was a conclusion of the witness. Reference to Fountain v. Brown, 38 Ala. 72, 75, will disclose the fact that an inapt citation of this Carmichael Case, 36 Ala. 616, was there made; whereas the probable purpose was to cite the other Carmichael Case, reported in the same volume, 36 Ala. at page 514 et seq., where pertinent pronouncements, supporting the ruling in the Fountain Case, appear.

In response to the second appeal of Torrey v. Burney, 113 Ala. 496, 505, 21 South. 348, 351, the witness Roden was asked if the testator "was capable of transacting ordinary business"; this question being put after the witness had stated a great many facts (indicated in the report of the appeal) "upon which he based his opinion that the testator was of unsound mind." The objection, *which the court sustained*, was that this question called for a conclusion of the witness. The court responded as follows:

"This latter witness [Roden] was not an expert * * * on insanity. The question to the witness Roden to which an exception was reserved, called for a mere conclusion, and a conclusion which involved expert knowledge"

—thus affirming the action of the trial court in disallowing the question. This ruling of the court has been interpreted by others, and we think correctly, as being in fact rested on the idea that only an expert witness on insanity can be properly allowed to give the opinon the question invited. If the mere expression under consideration is alone contemplated, it is manifest that that employed on the second appeal of the Burney Case is opposed to the above principle and pointed statement in the same connection to which we have made reference in the report of the first appeal in the course of the same contest (100 Ala. 174, 14 South. 685, 46 Am. St. Rep. 33), besides, according to one barely possible interpretation of the question, violating the rule that not even an expert witness can properly give his opinion that a testator had or did not have mental capacity to execute a will. These rulings on the two appeals of the Burney Case can be reconciled and are reconciled upon this consideration: That, while neither an expert nor a nonexpert witness can properly be permitted to give his opinion on the specific inquiry of mental competency vel non of a testator to execute a will, yet a nonexpert, as well as an expert, witness—shown to be qualified in the premises (Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33)—may give his opinion of the mental strength, "the clearness and soundness of his intellectual

powers," and that the properly advised judgment of the nonexpert witness on that phase of the inquiry may be invited and may be given to the trior of the issue through the means, the method, of such witness' expression of his opinion that the testator was or was not mentally competent to transact ordinary business or the details of ordinary business.

There is no reason why a properly qualified nonexpert witness may not be permitted to give in evidence an opinion of that particular phase of the subject, viz. mental capacity to transact ordinary business, when, as is the established doctrine in this jurisdiction, a properly qualified nonexpert witness may give his opinion that a person possessed a sound or unsound mind at or about a particular time. The major must include the minor, especially since sanity and insanity are known or are knowable, at least to laymen, alone through manifestations of what is usually thought to be a well-ordered or of what is conceived to be a disordered mentality. Since the execution of a will is, in a sense, at least, a transaction of business, this court, in the second appeal of the Burney Case, 113 Ala. 505, 21 South. 348, must have interpreted the question there objected to as comprehending the inquiry whether the witness' opinion was that Mr. Torrey was at the time capable of executing his will, thus and thereby subjecting the question to the familiar rule that no character of witness can be properly allowed to so affirm or disaffirm. Doubtless this court was influenced to this interpretation of the question by the common practice in the appellate courts, in observance of the well-known principle, that all equivocal or doubtful bases for exceptions in trial courts are construed with reasonable favor to sustain the action or view of the tribunal under review. The impossibility of according to the ruling made in Carmichael's Case, 36 Ala. 616, the influence usually accorded a decision long since rendered and unimpaired as authority, to the end that a conflict would be instituted between its doctrine and that announced in Burney's Case, 100 Ala. 174, 14 South. 685, 46 Am. St. Rep. 33 is demonstrated by these expressions from the same judges, in the other Carmichael Case, 36 Ala. 514, 522:

"That a person makes an improvident bargain, or many improvident bargains, that he is generally unthrifty in his business, or unsuccessful in one or many enterprises, does not, per se, prove him to be non compos mentis. These may coexist with a mind perfectly and legally sound. 1 Beck's Med. Jur. 745. Such testimony is certainly admissible, in connection with facts and circumstances tending to show mental aberration. Shrewdness in trade, and general success in business, would go far to rebut inconclusive testimony of mental unsoundness. So improvidence and recklessness in trade would render much more satisfactory and convincing circumstantial evidence which tended to prove mental aberration."

It need hardly be noted that the evidence of many of the circumstances enumerated in the above quotation could only be adduced through the employment of opinions and conclusions of witnesses qualified to form, to entertain and to deliver them. We therefore conclude that the Carmichael Case, as reported in 36 Ala. 616, is not now an authority; that the pertinent announcement in Burney v. Torrey (first appeal) 100 Ala. 174, 14 South. 685, 46 Am. St. Rep. 33, is sound, and is reaffirmed; and that, when explained and modified as stated, the presently pertinent ruling and expression of Torrey v. Burney (second appeal) 113 Ala. 505, 21 South. 348, is not unsound.

In due caution, it is well to recapitulate: Where the issue on the contest of a will is mental capacity vel non to execute the will, a properly qualified nonexpert witness may be invited to give and may give his opinion that the testator was capable or was incapable of transacting ordinary business, provided the question seeking to elicit the opinion is sufficiently guarded in its phraseology to avert the implication that the testator's capacity to execute the instrument offered for probate is within the question propounded to the witness. In order that a nonexpert witness may be qualified to give this character of opinion, he, the witness, must have had, not only sufficient opportunity through acquaintance with and observation of the testator to enable him to form a judgment with particular reference to the testator's capacity to transact ordinary business, at or about the time under inquiry, but also he must, if his opinion is unfavorable thereto, state the facts upon which he bases his opinion that the testator was mentally incompetent to transact ordinary business. His qualification should, so far as practicable and applicable, conform, in character and quality, to the analogy afforded by the instance where a nonexpert witness is called to testify to the unsoundness of mind of a testator. Burney v. Torrey, 100 Ala. 157, 172–173, 14 South. 685, 46 Am. St. Rep. 33.

[13] H. E. Wear, a brother of the decedent, was asked this question:

"In your opinion, was your brother in the full strength of his faculties last fall?"

The court had previously ruled that this witness was qualified to give an opinion as to his brother's mental status about the time the instrument propounded for probate was executed. He had testified that his brother was childish; that his mental ability had become impaired to some extent, along with his weakened physical condition—his brother being then about 79 years of age. Being qualified to give an opinion of the unsoundness of his brother's mind, no error was committed by allowing a question which sought to elicit and did elicit a response that the brother's mind did not possess, "last fall," its full strength.

[14-16] This witness was then asked:

"In your opinion, was he fully able to transact the details of business?"

The objection was stated to be "on the same grounds," doubtless referring to the grounds just previously laid against the question we have heretofore quoted. Those grounds were these: That it called for "a conclusion and unauthorized opinion of the witness, and not properly qualified." Under the rule whereby equivocal matters of construction in a bill of exceptions are resolved against the exceptor (Dicken's Case, 142 Ala. 49, 51, 39 South. 14, 110 Am. St. Rep. 17; McGehee's Case, 52 Ala. 224; Dowling's Case, 151 Ala. 131, 133, 44 South. 403), this ground of objection against the qualification of the witness to give the opinion the question invited, instead of against the question because it was not sufficiently qualified to only embrace a period at or about the time the instrument was executed, is rendered untenable. Of the two reasonably possible constructions of the bill of exceptions that least favorable to the exceptor must be accepted and accorded effect upon this review. The connection in which this question was propounded referred it to "last fall"—a season during which the paper propounded was executed. Moreover, the response of the witness to this question was at least not affirmative, if, indeed, it was any evidential response at all. His reply was:

"Well, I hardly know; it would be owing to what kind of business, I suppose."

Certainly the character and quality of the answer given excludes the possibility that the response was prejudicial to the appellant.

[17, 18] The following question was propounded to the contestants' witness D. H. Wear:

"State whether or not, in your opinion, he was—his mental powers were strong enough, active enough, to have enabled him to transact the ordinary business of—the ordinary business."

The court overruled the following grounds of objection (lettered here for convenience) to the quoted question:

That "it calls for (a) an opinion and an unauthorized conclusion of the witness, and (b) immaterial, irrelevant, illegal, and (c) the witness has not stated any facts upon which he can base such statement, and (d) no proper predicate has been laid as to time."

Immediately succeeding the action of the court in overruling the objection, an exception thereto was reserved; whereupon, before the witness had made any response, the examiner amended the question by this inquiry —evidently to meet and avoid the point taken by ground (d): "During the fall of 1914?" The witness answered: "Why, I don't think so." While the witness appears to have been qualified to form and give an opinion that his brother's mind was unsound during the time in question, yet there is an entire absence of evidence tending to show that the witness had observed facts or circumstances upon which he could base an opinion that his brother's mind was so impaired as to render him unable—according to the implications of

the question—to "transact ordinary business." He should have first been asked to state the facts upon which he based his anticipated opinion of his brother's mental inability to transact ordinary business. In re Carmichael, 36 Ala. 514, 522, 523. The ground of objection we have lettered (c) took this point, and was due to be sustained, and it was error to overrule it, unless the amendment of the question, before it was responded to by the witness, effected to put the question in the posture of a new question, to which no objection was interposed by the proponent. It is apparent from the transcript that, though the question was materially amended to meet one of the grounds of objection, counsel and the court and the witness as well quite naturally regarded the substance of the question as being unchanged by the addition of a phrase only qualifying the inquiry with respect to time. In these circumstances, it would be hypercritical to affirm, in effect, that the question to which the proponent objected and reserved an exception was not answered. Hence, for the prejudicial error committed in overruling the ground (c) of the objection to the last-quoted question the judgment must be reversed.

[19] Two of the assignments (11 and 12) complain of the admission of evidence by Mrs. Partain to the effect that her grandfather, decedent's father, was insane before his death, and that decedent's brother was then insane. Where there is other proof tending to establish the want of mental capacity of a person whose mental capacity is under investigation to make a will, it is competent to show in that connection that ancestors and blood relatives of the person under inquiry had become insane. 7 Ency. of Ev., pp. 453, 454, and notes; 22 Cyc. pp. 1117, 1118. There was other evidence tending to show Mr. Wear's mental incapacity to make a valid will in November, 1914. Whether there was evidence sufficient to establish the alleged incapacity is a question not presented for review on this appeal. 7 Ency. of Ev. p. 449 et seq.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur. SAYRE, J., dissents.