Paul E. Rankin, Appellee, v. John Rankin, Appellant.

Gen. No. 9,393.

Heard in this court at the May term, 1943. Opinion filed February 29, 1944. Rehearing denied April 22, 1944.

HOMER D. McLAREN, of Springfield, for appellant.

HOMER B. HARRIS and LYMAN S. MANGAS, of Lincoln, for appellee.

MR. PRESIDING JUSTICE DADY delivered the opinion of the court.

On April 9, 1942, in a conservatorship proceeding then pending in the county court of Logan county, a jury returned a verdict finding that the appellant John Rankin was incompetent and incapable of managing his estate. Thereupon, on the same day, the county court entered judgment on such verdict and adjudged appellant to be an incompetent and incapable of managing his estate.

Thereafter appellant perfected an appeal to the circuit court from such order of the county court. Thereafter, by agreement of the petitioner and of appellant,

by their respective attorneys, the cause was tried in the circuit court before the court, without a jury. At the conclusion of such trial on July 8, 1942, the circuit court entered an order finding that appellant "is an incompetent and is incapable of managing his estate." On July 23, 1942, the circuit court entered an order appointing a conservator.

Appellant brings this appeal from such order of July 23, 1942.

Appellant contends that the circuit court erred in not appointing a guardian *ad litem* to represent him in such circuit court proceeding.

Appellant cites many cases in which it is held that it is the duty of a court to appoint a guardian *ad litem* to represent persons defendant who have already been adjudicated insane. We do not consider such cases in point.

Appellant also relies on section 118 of our Probate Court Act (par. 270, ch. 3, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 110.367]), which provides that "In any proceeding for the appointment of a conservator the court may appoint a guardian *ad litem* to represent the alleged incompetent in the proceedings." Appellant contends this section is mandatory and should be construed as though the word "shall" were therein used instead of the word "may." With this contention we do not agree.

Generally words of a statute are to be construed in accordance with their ordinary use and meaning and in all cases the primary object is to ascertain the legislative intent. (*Landry v. E. G. Shinner & Co., Inc.,* 344 Ill. 579.) The word "may" is usually employed as implying permissive or discretional as opposed to mandatory action or conduct. (*Foutch v. Zempel,* 332 Ill. 192, 198.) The word "may" is construed as "shall" or "must" only where it is necessary so to construe it to carry out the intention of the legislature, or when the rights of the public or third persons de-

pend upon the exercise of the power given. (*Kane v. Footh*, 70 Ill. 587.)

In the case before us we do not perceive that either the rights of the public or third persons demand that the court shall in all cases appoint a guardian *ad litem* in behalf of the alleged incompetent upon the hearing for the appointment of a conservator. In many cases, and the one before us is an example, where it appears that the alleged incompetent is aware of the nature of the proceeding brought against him and possesses sufficient judgment to select his own counsel to defend his interests, then we do not think that any useful purpose would be served by the appointment of a guardian *ad litem*. We can conceive, however, that other cases may arise where it would be apparent that the alleged incompetent by reason of his physical or mental condition was not capable of defending his own interests when it would be an abuse of discretion for the court not to appoint a guardian *ad litem*.

From the provisions of section 118 and other provisions of the Probate Act, it appears to us that the legislature intended to leave the question of the appointment of such a guardian *ad litem* to the sound discretion of the trial judge, to be exercised by him according to the circumstances of each particular case.

In section 67 (par. 219) of the same Probate Act [Jones Ill. Stats. Ann. 110.316] it is provided that if any heir, legatee or devisee of a testator is a minor, the probate court "shall appoint a guardian *ad litem* to represent him at the hearing on the admission of the will to probate, but the court in its discretion may waive the appointment if it appears unnecessary to protect the interests of the minor." Here, although the word "shall" is used, the legislature by the language that follows clearly shows an intention to give the trial court a discretion in making the appointment, and the paramount consideration appears to be the necessity for the protection of the interests of the

minor. There is nothing in section 118 to indicate that the legislature intended to deprive the trial court of this same discretion where the interests of an incompetent are involved.

Appellant contends that he was an incompetent witness and that it was therefore error to require his examination as an adverse witness. He testified not only as an adverse witness, but later testified as a witness in his own behalf. It is our opinion that his testimony was competent (*People v. Payne*, 161 Ill. App. 640; *Dowie v. Driscoll*, 203 Ill. 480), and that it was proper to require the adverse examination.

Appellant next contends that the finding of incompetency is against the manifest weight of the evidence. The trial lasted many days. Ten witnesses testified for the petitioner and thirty-three for the respondent. The testimony is voluminous, taking up about 1,400 pages of the record. Obviously, it is impractical and would serve no useful purpose to attempt to make a detailed review of all of such testimony.

At the time of the hearing appellant was aged 78 years. He was a bachelor, and his nearest relatives were nephews and nieces, the petitioner being a nephew. He "didn't go very far in school," never worked for any one, and "just had farming and limestone plant experience." He owned 503 acres of farm land which he had inherited. In 1935 the quarry produced about 39,000 tons, in 1940, 44,000 tons and in the first eight months of 1941 about 24,000 tons. The product sold at from $1.00 to $1.15 per ton.

In the fall of 1938 appellant's face and hands were severely scalded in an explosion at the plant, and as a result he was in a hospital for a short time. Thereafter he was apparently not very active in the management or conduct of the business. He then lived alone in a house on the farm. A woman whom he had known for several years, but who was then apparently only a casual acquaintance, was in the hospital visiting an-

other patient and while there stepped into appellant's room and visited with him. Thereafter, until the trial, this woman apparently had a dominating influence in the life and business affairs of appellant. On November 1, 1938, she and her husband moved into and thereafter until the time of the trial lived in the Rankin home. She was the housekeeper, and in a very short time also acted as bookkeeper at the plant, and soon thereafter was the apparent, if not the actual, manager of the business, although she had no previous business experience. She made all or practically all collections and disbursements, consisting of large sums of money, and had charge of the books and bank accounts. Apparently she ran the business in a haphazard sort of way. She testified that most of the account books and records for the years 1939 and 1940 were eaten by mice or burned before the trial. The plant ceased operations in September 1941. She testified that when she took over the books he was indebted in about the sum of $30,000 and at the time of the trial was indebted in about the same amount. On December 1, 1941, appellant gave this woman a bill of sale for the expressed consideration of $1, by which he conveyed to her "all live stock, furniture, automobile, farming implements, poultry and all machinery and equipment of every kind and character whatsoever used in and about the operation of the quarry, . . . including all grain and other personal property now owned by me and located as above set forth." It is not contended that there was any actual consideration for this conveyance, but it appears to be contended that such conveyance was for the convenience of appellant. On February 4, 1942, she reconveyed most of such personal property to appellant, but this was after the petition for the appointment of a conservator was filed on January 8, 1942.

During this time the husband of this woman was employed on the farm and about the business, but never received any set wages. During such period

there was also employed on such premises several relatives of such woman and of her husband, as well as a former husband of such woman. Although she was supposed to receive as compensation only the sum of $15 per week, plus "extra" money for what she might do, and although her husband received no set wages or salary, yet this couple apparently greatly prospered by their relations with appellant. At the time of the trial she held three notes signed by appellant for the aggregate sum of $2,822.65 which she claimed he owed her.

We have carefully reviewed the evidence, and it is our opinion that there was ample evidence to justify the finding of the trial court that the appellant was incompetent and incapable of managing his estate.

Where the chancellor receives the evidence in open court and sees the witnesses and hears them testify, he has a better opportunity for determining the weight and credit that should be given their testimony than does a court of review, and under such circumstances a court of review will not disturb the findings of the chancellor unless manifestly and palpably wrong, and this is true even though the court of review might be inclined to find otherwise had it been placed in the position of the trial court upon the trial of the case. (*Hall v. Pittenger,* 365 Ill. 135; *Widmayer v. Davis,* 231 Ill. 42.)

The remaining contention of the appellant is that the circuit court had no jurisdiction to appoint a conservator, but that if a conservator was to be appointed, the circuit court, after finding the appellant incompetent, should have remanded the cause to the county court for further proceedings in such court. For some reason, not apparent, the county court did not appoint a conservator.

In *Snyder v. Snyder,* 142 Ill. 60, 65, the precise question was passed upon, and the Supreme Court there said, "On a trial of the appeal in the circuit court, as

the trial was required to be *de novo,* upon the return of the verdict that Mary T. Snyder was distracted it was the duty of the circuit court to appoint a conservator, which it did.'' (See also *McMahan v. Trautvetter,* 305 Ill. 395.)

The judgment of the circuit court is affirmed.

*Affirmed.*