48 So.2d 207

**HORNADAY v. HORNADAY.**

**6 Div. 992.**

Supreme Court of Alabama.

Oct. 12, 1950.

Ray & Giles, of Birmingham, for appellant.

Jas H. Bradford and Jas H. Faulkner, of Birmingham, for appellee.

LAWSON, Justice.

This was a statutory inquisition of lunacy commenced by the filing in the probate court of Jefferson County of a sworn petition by Jacob W. Hornaday, Jr., seeking to have a guardian appointed to manage and conserve the property of his father, Mr. Jacob W. Hornaday, Sr., a resident of Jefferson County. T : petition averred that Mr. Hornaday, Sr., who was seventy-six years of age, was of unsound mind and incapable of governing himself or conducting and managing his business affairs. §§ 9 and 11, Title 21, Code 1940.

Upon the filing of the petition a guardian ad litem was appointed and the judge of the probate court issued a writ directed to the sheriff to take the body of the said J. W. Hornaday, Sr., and if consistent with his health and safety, have him in Court to be "present at the place of trial." §§ 11 and 12, Title 21, Code 1940.

The sheriff executed the writ and presented Jacob W. Hornaday, Sr., in court on September 30, 1949, the day set for the trial. The guardian ad litem and counsel appearing on behalf of Mr. Hornaday, Sr., both filed answers denying the material allegations of the petition.

The trial was had before the judge of the probate court without a jury, no jury having been demanded. Such procedure is in accordance with the provisions of § 181(8), Title 62, Code 1940, and no question is raised here as to this procedure.

The appeal is by the petitioner below, Jacob W. Hornaday, Jr., from a decree denying the prayer of the petition and declaring Jacob W. Hornaday, Sr., to be of sound mind.

After the petitioner had rested, the trial court excluded the evidence on motion of counsel for the alleged incompetent. This action of the trial court is assigned as error. But we pretermit any discussion of such action of the trial court as the case must be reversed on other grounds hereinafter noticed. In re Carmichael, 36 Ala. 514.

Insanity may be shown by the proof of acts and conduct of the alleged incompetent inconsistent with his character and previous conduct. McCurry v. Hooper, 12 Ala. 823, 46 Am.Dec. 280.

In Howard v. State, 172 Ala. 402, 410, 55 So. 255, 257, 34 L.R.A.,N.S., 990, it was said: "In inquiries as to sanity or insanity, it has been said that 'every act of the party's life is relevant to the issue.' 1 Greenl. on Ev. (16th Ed.) p. 58 * * *." But the broad statement quoted above has been modified. In Mitchell v. Parker, 224 Ala. 149, 151, 138 So. 832, 834, in treating the statement quoted above from Howard v. State, supra, this court said: "When the insanity, vel non, of a person is involved in the issue submitted to the jury, a wide latitude is allowed in tracing the life record of the subject. In fact, it has been said that, on such an inquiry, 'every act of the party's life is re-

levant to the issue.' Howard v. State, 172 Ala. 402, 55 So. 255–257, 34 L.R.A.,N.S., 990. Of course, this expression must be understood to carry the necessary limitation that the acts inquired about must throw some light upon the inquiry." See George v. State, 240 Ala. 632, 200 So. 602, 606; Coffey v. State, 244 Ala. 514, 14 So. 2d 122; Blue v. State, 246 Ala. 73, 19 So. 2d 11.

After one or two witnesses had been examined by petitioner, the trial court announced in effect that he would admit no evidence as to the acts, conduct or demeanor of the alleged incompetent which occurred more than thirty days prior to the time of the trial. Thereafter, objections of counsel representing the alleged incompetent were sustained unless it was shown that the matters about which the witness proposed to testify occurred within the thirty-day period.

■ The petitioner sought to testify as to the conduct and demeanor of his father on an occasion in 1947 in Ohio when petitioner went to his father's assistance in the State of Ohio where he was confined in jail. At that time the father was approximately seventy-four years of age. He had held a responsible position with a leading concern in Birmingham for approximately fifty years and had accumulated considerable money. Confinement in jail was out of character and we think the trial court erred to a reversal in not permitting petitioner to testify as to the acts, conduct and demeanor of his father on that occasion.

Likewise it was reversible error for the trial court to refuse to permit petitioner to testify as to his father's conduct in July, 1949, approximately three months prior to the trial.

■ True, the question for decision was the condition of the mind of the alleged incompetent at the time of the trial. But prior conduct which tends to throw some light upon that inquiry is admissible and the trial court erred in limiting such conduct to a period of thirty days immediately preceding the trial.

Inasmuch as there must be another trial, we call attention to the case of In re Carmichael, 36 Ala. 514, 522, where it was said:

"We do not subscribe to the proposition, that the term non compos mentis necessarily denotes a total deprivation or destruction of the intellectual powers. It denotes unsoundness of mind; not mere mental weakness, but a diseased or unhealthy mind.—Code, § 1; Rawdon v. Rawdon, 28 Ala. [565] 567, and authorities cited; McElroy v. McElroy, 5 Ala. 83; Stewart's Ex'r v. Lispenard, 26 Wend. [N.Y.] 255; Dew v. Clark, 5 Russ. 163; 1 Jarman on Wills, marg. p. 27, note 1; Stubbs v. Houston, 33 Ala. 555.

"That a person makes an improvident bargain, or many improvident bargains; that he is generally unthrifty in his business, or unsuccessful in one or many enterprises, does not, per se, prove him to be non compos mentis. They may co-exist with a mind perfectly and legally sound. 1 Beck's Med. Jur. 745. Such testimony is certainly admissible, in connection with facts and circumstances tending to show mental aberration. Shrewdness in trade, and general success in business, would go far to rebut inconclusive testimony of mental unsoundness. So, improvidence and recklessness in trade would render much more satisfactory and convincing circumstantial evidence which tended to prove mental aberration."

There is another case styled In re Carmichael, which is reported in 36 Ala. at page 616. It was also a lunacy proceeding. It was there held in effect that a witness should not be permitted to testify that in his opinion the alleged non compos mentis is incompetent to manage his affairs and take care of himself. But that holding is no longer authority in this jurisdiction. Wear v. Wear et al., 200 Ala. 345, 76 So. 111.

In Wear v. Wear et al., supra, it was said in part as follows: "There is no reason why a properly qualified nonexpert witness may not be permitted to give in evidence an opinion of that particular phase of the subject, viz. mental capacity

to transact ordinary business, when, as is the established doctrine in this jurisdiction, a properly qualified nonexpert witness may give his opinion that a person possessed a sound or unsound mind at or about a particular time. The major must include the minor, especially since sanity and insanity are known or are knowable, at least to laymen, alone through manifestations of what is usually thought to be a well-ordered or of what is conceived to be a disordered mentality. * * *

\* \* \* \* \* \*

"* * * In order that a nonexpert witness may be qualified to give this character of opinion, he, the witness, must have had, not only sufficient opportunity through acquaintance with and observation of the testator to enable him to form a judgment with particular reference to the testator's capacity to transact ordinary business, at or about the time under inquiry, but also he must, if his opinion is unfavorable thereto, state the facts upon which he bases his opinion that the testator was mentally incompetent to transact ordinary business. His qualification should, so far as practicable and applicable, conform, in character and quality, to the analogy afforded by the instance where a nonexpert witness is called to testify to the unsoundness of mind of a testator. Burney v. Torrey, 100 Ala. 157, 172–173, 14 So. 685, 46 Am.St.Rep. 33." 200 Ala. at page 350, 76 So. at page 116.

As before indicated, the alleged incompetent was present during the proceedings in the court below. The petitioner sought to examine him as a witness and called him for that purpose. The objection to this procedure interposed by counsel for the alleged incompetent was sustained and he was not required to testify. This action of the court is assigned as error.

We do not seem to have passed on this question.

In support of the trial court's ruling counsel for appellee cite the case of In re Waite's Guardianship (Crocker First Nat. Bank of San Francisco et al. v. Waite), Cal.App., 91 P.2d 617. In that case a district court of appeal of California held in effect that the trial court did not err in refusing to permit the alleged incompetent to testify in her own behalf. While the question in that case was not identical with the question here under consideration, if that case stated a correct rule it would tend strongly to support the ruling of the trial court. If the trial court can refuse to permit the alleged incompetent to take the stand and give testimony in his own behalf, it would seem to follow that it could refuse to require the alleged incompetent to testify when called by the person or persons asserting his incompetency. But the holding in the case of In re Waite's Guardianship, supra, was not followed by the Supreme Court of California when the case came to that court. In re Waite's Guardianship (Crocker First Nat. Bank of San Francisco et al. v. Waite), 14 Cal.2d 727, 97 P.2d 238. It was there said:

"On the evidence presented it was prejudicial error for the court to refuse to permit appellant to testify in her own behalf. The record clearly shows that she was of sound mind and qualified to testify under sections 1879 and 1880 of the Code of Civil Procedure. The only reason assigned by the court for refusing to permit her to testify was that it did not want to hear any evidence except medical testimony. Appellant's testimony could not be properly excluded upon the sole ground that she was a lay witness. Code Civ. Proc. § 1870, subd. 1; see Atkins Corp. v. Tourny, 6 Cal.2d 206, 57 P.2d 480.

"This proceeding was commenced pursuant to section 1461 of the Probate Code, which provides that notice shall be given to the alleged insane or incompetent person of the time and place of hearing, and that such person, if able to attend, 'must be produced at the hearing.' As this court observed in Matter of Coburn, 165 Cal. 202, 217, 131 P. 352, 358, such language 'seems to contemplate an examination'. The section has been amended since that decision, but the quoted language remains unchanged. Apart from the provisions of the statute applicable to this proceeding, it is the general rule that the right of a party to testify in his own behalf is fundamental. See McClatchy v. Superior

Court, 119 Cal. 413, 51 P. 696, 39 L.R.A. 691; Calder v. Levi, 168 Md. 260, 177 A. 392, 97 A.L.R. 880; 49 Harv.L.Rev. 499.

"It is difficult to conceive of a situation in which a party has a greater right to, or need for, his own testimony than in the type of proceeding considered here. The right to control her own person and affairs was taken from appellant upon the testimony of two strangers whose conclusions were based upon acts and circumstances she was not permitted to explain or controvert, and she was denied the opportunity to show by testimony her capacity for rational thought and intelligent action." 97 P.2d 239.

In support of their argument that the trial court erred to a reversal in the ruling here under consideration, counsel for appellant cite the following cases from other jurisdictions: State ex rel. Thompson v. District Court, 118 Mont. 95, 163 P.2d 640; In re Coburn, 165 Cal. 202, 131 P. 352; Rankin v. Rankin, 322 Ill.App. 90, 54 N.E.2d 58; Cogan v. Cogan, 202 Mass. 58, 88 N.E. 662.

In State ex rel. Thompson v. District Court, supra, [118 Mont. 95, 163 P.2d 645], it does not appear in the opinion that any effort was made to have the alleged incompetent, Mrs. Thompson, take the stand. In reversing the trial court, the Supreme Court of Montana said in part as follows:

"Mrs. Thompson was in the courtroom during at least a part of the hearing but did not testify. The statute requiring her production in court would seem to contemplate her examination. Matter of Coburn, 165 Cal. 202, 131 P. 352. In re Waite's Guardianship, 14 Cal.2d 727, 97 P.2d 238. We think justice requires and we order the case remanded to the trial court with directions to rehear the matter and, at the new hearing, an examination of Mrs. Thompson shall be had along with such other evidence as either party desires to submit."

The other cases cited by counsel for appellant on this point hold, in effect, that the trial courts did not err in requiring the alleged incompetents to testify when called by those asserting their incompetence. Since the proceeding is civil and not criminal in nature, no constitutional right would be invaded.

According to our research, the case of Jones v. Van Gundy, 16 Ind. 490, is more in point than any case which we have found. The opinion is short and is set out in full:

"The appellant filed a complaint, averring that the appellee was of unsound mind and incapable of transacting business. Issue was made, and, on the trial, the appellant moved the Court to examine, or cause to be examined, the said appellee, before the jury, touching her capacity to transact business, and her mental soundness. The motion was overruled. This presents the only question in the case. The record does not disclose the reason for the refusal by the Court to permit the examination sought.

"The statute is silent upon the subject. Under the practice in England, the control of the persons and estates of idiots, lunatics, &c., was vested in the Court of Chancery. Commissioners were appointed by the Chancellor to inquire as to lunacy. The return made to the writ of inquiry, thus issued, might be traversed, and the question presented to a jury. The person alleged to be of unsound mind might be brought before the commissioners, or the Chancellor, for inspection and examination. But whether the person should be so examined, appears to have been discretionary with the commissioners, the jury, or the Chancellor. Mad. Ch., vol. 2, 728 to 740; 12 Ves. 455; 2 id. 405; 1 P.Wms. 701; [Matter of Wendell] 1 Johns. Ch. R. 600; 3 Burr. 1631; 1 Har.Ch.Pr. 753; 1 Coll. on Id. & Lun. 324; 3 Atk. 6; Amb. 109, Southcote's case. The same practice appears to have been pursued, in some instances, in New York. 1 Johns.Chy. 600.

"In the case at bar, the motion to enter into such examination emanated from the person averring the unsoundness of mind. It is not apparent that any of the triers of that question desired such an examination. We can not say, from the record before us, that there was any error in the ruling on the motion. We are of opinion that the judge, of his own motion, might have ordered such examination; and, ordinarily,

it would not be error for him to so rule on motions of persons interested; and it may be possible that the jury, as the triers of the question of lunacy, or unsoundness of mind, would have the right to require, or enter into, an examination and inspection, but this we do not now decide.

"We see no abuse of discretion, and consequently no error in the ruling."

 We think the safer rule is to leave to the trial court's sound judicial discretion the question as to whether or not the alleged incompetent must testify when present in court and when called by the person or persons asserting his incompetency, for the reason that conditions may exist which would make it injurious or detrimental to him.

We would like to point out, however, that proceedings of this kind, although instituted by those persons named in the statute, § 11, Title 21, Code 1940, are inquiries on behalf of society to determine the subject's present mental condition. The object is not to punish or determine definitely any property rights, but is intended to fix the mental status of such person at the time of the proceeding, and to determine for the time being the propriety of appointing a guardian to preserve his property, both for his own protection and that he may not become a charge upon society. Smoot, Law of Insanity, § 130, p. 89.

It would appear, therefore, that it would be to the best interest of all concerned if the subject is examined as a witness. The trier of fact would then have the fullest opportunity to observe his manner and behavior, the way in which his mind appeared to work, how he spoke and acted and apparently felt in regard to matters which arose. These and other manifestations would be incapable of reproduction in the printed record, but could properly have great weight with the trier of fact in regard to the finding which should be made.

Reversible error is not shown in connection with a refusal of the trial court to grant the request of counsel for petitioner that three physicians be appointed by the court to examine the alleged incompetent. This request came after the petitioner had rested his case and the evidence had been excluded on motion of counsel for the alleged incompetent. It came too late.

For the error pointed out, the decree of the trial court is reversed and the cause is remanded.

Reversed and remanded.

BROWN, FOSTER, and STAKELY, JJ., concur.